(18 App. Div. 393.)

TREPAGNIER & BROS., Limited, v. ROSE et al.

(Supreme Court, Appellate Division, Second Department.   June 29, 1897.)

ATTACHMENT—LEVY OF WRIT—INSTRUMENT FOR PAYMENT OF MONEY.

    An instrument for the payment of money, within the meaning of subdivision 2, § 649, Code Civ. Proc., relating to the levy of a warrant of attachment, must be an instrument which acknowledges an absolute obligation to pay, not conditional or contingent, as an existing debt, and such that in an action upon it the plaintiff, in order to entitle himself to a recovery, would be required only to offer the instrument in evidence; and a policy of fire insurance under which a loss has occurred is not such an instrument.

Appeal from special term.

Action by Trepagnier & Bros., Limited, against Arthur Rose and others.   From an order denying a motion by defendants to vacate and set aside an alleged levy under an attachment, defendants appeal. Affirmed.

Argued before CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Marshall B. Clarke, for appellants.

Theodore F. C. Demarest, for respondent.

CULLEN, J.   The only question presented by this appeal is whether a fire insurance policy under which a loss has occurred is an instrument for the payment of money within the meaning of subdivision 2 of section 649 of the Code of Civil Procedure.   If it is, the sheriff has made no valid levy under his attachment, for he has failed to obtain possession of the written policy.   In our opinion, a policy of insurance is not an instrument for the payment of money, under the section cited.   It is not necessary for us in this case to go to the extent of holding that instruments for the payment of money, mentioned by the Code, include only negotiable instruments.   We do not decide that proposition.   But we are clear that to be an instrument for the payment of money it must be an instrument which acknowledges an absolute obligation to pay, not conditional or contingent; one, the execution of which being admitted, it would be incumbent on the plaintiff, in an action to enforce it, only to offer the instrument in evidence to entitle him to a recovery,—in other words, an instrument that admits an existing debt.   We think that this is the correct line which divides such instruments from other written contracts which

contain obligations on the part of one party or the other to pay money, such as agreements of sale, hiring, leases, building contracts, etc. The exact terms of the insurance policies are not given in the record before us. We may assume, in the absence of any express statement to the contrary, that they are of the character generally issued by companies doing insurance business. If so, the destruction of or injury to the property insured, of itself alone, did not create a liability on the part of the company. It would be necessary to submit proofs of loss, and the company's obligation to pay is conditioned on the presentation of proper proofs. It is therefore plain that a policy of insurance does not fall within the definition we have given to the terms employed by the Code of Procedure. The counsel for the appellant cites certain decisions which he contends are opposed to the views we here express. Some expressions of the opinions in those cases do conflict with our view, but an examination of the cases will show that the point was not necessarily involved. In Hankinson v. Page, 19 Abb. N. C. 274, Judge Wallace held that an ordinary policy of insurance after loss was an instrument for the payment of money which the sheriff was required to take into his actual custody to constitute a valid levy under an attachment. But as he also held that a certificate of membership in a mutual benefit company was not such an instrument, he reversed the decision of the referee, and granted a new trial. In the case of Kratzenstein v. Lehman (App. Div., First Dept., not yet officially reported) 44 N. Y. Supp. 369, the defendant held a life insurance policy, payable on his death, or at a specific time, if he then survived, which had not yet matured. The sheriff did not obtain possession of the policy, but the levy was made by serving the warrant of attachment and notice upon the life insurance company. The appellate division held the levy valid. In the prevailing opinion it is said:

"Whenever it shall appear that the primary object of any instrument was to assure to any person the payment of a certain sum of money upon a consideration that is no longer executory as to him, and where the only thing to be done to complete the contract is to pay the money for which the paper was primarily made, that we think may be said to be an instrument for the payment of money, under the provisions of this subdivision."

The learned court upheld the levy on the ground that premiums were still to be paid by the insured, and therefore the instrument had not yet become one for the payment of money. But, as the court upheld the levy, the remarks quoted from the opinion were not necessary to the decision of the case. There was a dissent in the case, but that dissent did not proceed on any ground bearing on the question before us. On the other hand, as supporting a contrary view, is to be found the intimation of Justice Van Brunt in Von Hesse v. Mackaye, 55 Hun, 365, 8 N. Y. Supp. 894, that subdivision 2 of section 649 was meant to include only cases of negotiable instruments. There is very much to be said in favor of this view. It is difficult to understand the policy or reason of a provision which would enable a debtor to put beyond the reach of his creditor a claim evidenced by a nonnegotiable instrument by secreting that instrument. In the case of negotiable instruments the reason is plain. If the debtor on such an

instrument could be compelled to pay the debt on the attachment, without the production of the instrument, he would be liable to have to pay it over again. There is a long line of authorities which, though not on the exact point before us, tend to support our view. By chapter 325 of the Laws of 1825 it was enacted that where any incorporated company should be sued "upon any contract, note, or other evidence of debt," judgment should be entered against it, unless it was made to appear to a judge or the court that it had a substantial defense. Under this statute it was held that a policy of insurance by an incorporated insurance company was not a contract, note, or other evidence of debt, within the meaning of the statute. Anon., 6 Cow. 41; Tyler v. Insurance Co., 2 Wend. 281. The Revised Statutes continued this provision, with some change of phraseology, and it is now found in section 1778 of the Code of Civil Procedure. The language of this section is, "for the non-payment of a promissory note, or other evidence of debt, for the absolute payment of money, upon demand, or at a particular time." In New York Life Ins. Co. v. Universal Life Ins. Co., 88 N. Y. 424, it was held, overruling Studwell v. Insurance Co., 19 Hun, 127, that a life insurance policy which had matured and become due was not an evidence of debt for the absolute payment of money, within the meaning of the Code. Judge Finch there said:

"But there is a distinction between an instrument which recognizes on its face the existence of a debt which it promises to pay absolutely, and at a particular time, and one which acknowledges no existing debt, but agrees that in certain contingencies, and upon the fulfillment of certain conditions, one shall arise in the future. The difference is between a debt admitted and payable absolutely and one which may grow out of the happening of a contingency and the due performance of conditions. It is true that the liability upon a fire insurance policy depends upon a contingency that may never happen, since no loss may occur, while in a life policy the death of the insured is certain to occur at some time; and it is also true that in the latter case the amount payable is fixed and definite, while in the former the damages depend upon the actual loss. And yet the instrument is not one which, on its face, and in and by itself, is an evidence of debt absolutely payable, and its original and inherent character is not changed by the after-occurrence of a contingency or performance of conditions. By its own terms it is payable, not absolutely, but conditionally. It admits no existing debt, but agrees that one may arise if certain specified conditions are performed."

All this, in our opinion, equally applies to the case before us, and the true test whether a contract is an instrument for the payment of money is whether it acknowledges an existing debt or not.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.