Columbia Bank and Hugh J. Grant, as Sheriff of the City and County of New York, Respondents, *v.* The Equitable Life Assurance Society of the United States, Appellant.

*Tontine savings fund policy — levy of an attachment thereon — when no debt exists in favor of the insured against the company until the former elects which option, of several given to him by the policy at the completion of the tontine dividend period, he will select.*

A tontine savings fund policy of life insurance provided that previous to the completion of its tontine dividend period on October 8, 1888, the policy should have no surrender value in cash or in a paid-up policy, but that upon the expiration on that date of the tontine dividend period, the legal holder of the policy should have the following options: *First,* to withdraw in cash the policy's entire share of the assets; *second,* to convert the policy into a paid-up policy; *third,* to continue the insurance for the original amount and apply the tontine dividend in reduction of the subsequent premiums, and, *fourth,* to withdraw in cash the policy's share of the accumulated surplus and to continue the policy in force on the ordinary plan.

Prior to October 8, 1888, an attachment creditor of the insured, the latter being then the legal holder of the policy, gave notice to the insurance company of an election to receive the full cash value of said policy on the 8th day of October, 1888. On that day the sheriff, on behalf of such attachment creditor, served upon the insurance company a copy of the warrant of attachment and demanded the cash value of the policy, which demand was refused. Thereafter, the insured, as the legal holder of the policy, elected to take a policy payable upon his death to his children, and in pursuance of that election the insurance company issued the policy.

*Held,* that, until the legal holder of the policy exercised his option after the completion of the tontine dividend period, he had no demand which he could enforce against the insurance company, and that, consequently, there was on October 8, 1888, when the warrant of attachment was served on the insurance company, no interest of the attachment debtor to which it could attach;

That, assuming that the warrant of attachment had been served after the completion of the tontine dividend period, the attachment creditor would not be the legal holder of the policy and would not, therefore, be entitled to exercise the option given by the terms of the policy to the legal holder thereof upon the expiration of the tontine dividend period;

That the right of election existing in the attachment debtor upon the completion of the tontine dividend period could not be levied upon as a cause of action arising upon contract under section 648 of the Code of Civil Procedure, as such election must precede the existence of a cause of action against the insurance company.

APPEAL by the defendant, The Equitable Life Assurance Society of the United States, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 30th day of June, 1902, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 4th day of August, 1902, denying the defendant's motion for a new trial made upon the minutes.

*C. B. Alexander,* for the appellant.

*Julius J. Frank,* for the respondents.

INGRAHAM, J.:

This action was brought in aid of an attachment alleged to have been issued out of the Superior Court of the city of New York on the 31st day of May, 1887, in an action wherein the Columbia Bank, one of the plaintiffs in this action, was plaintiff and Thomas J. Hurley was defendant. It appeared that on the 9th day of October, 1873, the defendant issued to Hurley a policy of life insurance known as a "Tontine Savings Fund Policy." By it the defendant, in consideration of the sum of $204 to be paid in advance by the assured and of the annual premium of $204 to be paid on or before the eighth day of October in each year during the continuance of the policy, did "assure the life of said Thomas J. Hurley of Rochester, in the county of Monroe, State of New York, in the amount of Ten thousand dollars, for the term of his natural life." In 1882, by an amendment to the policy, it was agreed that the amount of the said assurance, should the said Thomas J. Hurley die before the 8th day of October, 1888, was to be paid to his surviving children, share and share alike. The policy provided that if the premium should not be paid in cash on or before the days mentioned for the payment thereof, then the defendant should not be liable for the payment of the sum assured, or any part thereof, and that the policy should cease and determine; and that in case the policy should cease and determine or become or be null and void, all payments made thereon should be forfeited to the defendant. It was further provided that the policy should be issued under the tontine savings fund plan; that the tontine dividend period for this policy

should be completed on the 8th day of October, 1888; that no dividend should be allowed or paid on the policy unless the person whose life was assured should survive the completion of its tontine dividend period, and unless the policy should then be in force; that "all surplus or profits derived from such policies on the Tontine Savings Fund Assurance Plan as shall cease to be in force before the completion of their respective Tontine Dividend Periods shall be apportioned equitably among such policies as shall complete their Tontine Dividend Periods;" that "upon the completion of the Tontine Dividend Period on Oct. 8, 1888, provided this policy shall not have been terminated previously by lapse or death, the legal holder or holders of this policy shall have the option either : *First*, to withdraw in cash this policy's entire share of the assets (whether in the reserve fund proper or in the accumulated surplus); *secondly*, to convert the same into a paid-up policy for an equivalent amount, provided always that if the amount of said paid-up policy shall exceed the original amount of the assurance, a certificate of good health from one of the Society's medical examiners shall be required; *thirdly*, to continue the assurance for the original amount and apply the entire Tontine Dividend to the purchase of an annuity to reduce the subsequent premiums falling due upon this policy, provided that in any year in which the amount derived from such annuity, together with the annual dividend on this policy, shall exceed the amount of premium due thereon, the excess shall be paid in cash to said Thomas J. Hurley or assigns; or *fourthly*, to withdraw in cash this policy's share of the accumulated surplus and continue the policy in force on the ordinary plan;" and that "previous to the completion of its Tontine Dividend Period this policy shall have no surrender value in cash or in a paid-up policy." Prior to the completion of the tontine dividend period this policy was an ordinary life policy if the assured should die before the 8th day of October, 1888, the amount to be paid to his surviving children, share and share alike. It was only upon the completion of the tontine dividend period that the options were to accrue to the legal holder or holders of the policy, and this tontine dividend period was completed on the 8th day of October, 1888.

It is alleged in the complaint that the cash value of the said policy on the 8th day of October, 1888, was $2,835.30, which sum was on

that day due and payable to Hurley by the defendant in accordance with the provisions of the policy; that on the said 8th day of October, 1888, the plaintiff Hugh J. Grant, as sheriff, acting under and in pursuance of said warrant and in the execution of the same, "duly levied upon the said sum of money on that day due and payable under the provisions of said policy of insurance so issued as aforesaid by the defendant herein upon the life of said Hurley and demanded from the said defendant the said twenty-eight hundred thirty-five and 30/100 dollars, the cash value of said policy on that day payable to said Hurley," and that prior to the 8th day of October, 1888, the plaintiff, the Columbia Bank, had given notice to the defendant of its election to receive the full cash value of said policy on the 8th day of October, 1888. The defendant in its answer alleges that "if the said Hurley survived the said 8th day of October, 1888, and had exercised certain privileges secured to him by said policy, as will more fully appear from said policy itself when produced, that the full cash value of said policy would have been $2,835.30, but it denies that said sum was on that day due and payable to the said Hurley by the defendant in accordance with the provisions of the said policy;" admits that on the 8th day of October, 1888, "a paper purporting to be a copy of a warrant of attachment against the property of said Hurley and a copy of the affidavit upon which the same purported to have been based was left with the defendant by a person purporting to represent the plaintiff Hugh J. Grant, as Sheriff;" and that a demand was made upon it by said person purporting to represent the said Hugh J. Grant as sheriff, for the sum of $2,835.30 alleged to be due under the provisions of the said policy, and that it refused to pay the same; but denies that the said sum of $2,835.30, or any sum whatever, was due and payable by the said defendant to Hurley, or to the plaintiffs, or either of them, on the 8th day of October, 1888. It is further alleged that the plaintiffs did not, by virtue of any of the proceedings or acts which are alleged to have been had or to have taken place, make a levy upon the said policy or acquire any lien upon or interest therein or thereunder; that the said policy has never been in its possession or under its control since the time of its issuance, to wit, on or about the 8th day of October, 1873, and there was not in its possession or under its control at the time the levies or either of them were

sought to be made, any property whatever belonging to said Hurley.

Upon the trial the court submitted to the jury the question as to whether, prior to the attempted levy by the sheriff, and in the year 1882, the said policy had been assigned by Hurley to his children. That question the jury answered in the negative, whereupon the court directed a verdict for the plaintiff for the sum of $2,835.30, with interest thereon from the 8th day of October, 1888, and from the judgment entered upon that verdict the defendant appeals.

The principal question involved upon this appeal is whether the Columbia Bank acquired any lien upon this policy of insurance, or the obligation of the defendant to Hurley under the policy by virtue of the service of the warrant of attachment and the demand made by the sheriff upon the defendant on the 8th of October, 1888. It is not pretended that the sheriff ever had actual possession of the policy of insurance, and the bank acquired a lien, if at all, by the service of a copy of the warrant of attachment upon the defendant and the demand then made by the sheriff. The method by which a levy under a warrant of attachment can be obtained is regulated by section 649 of the Code of Civil Procedure. Subdivision 2 of that section provides that a levy must be made upon personal property capable of manual delivery, including a bond, a promissory note, or other instrument for the payment of money, by taking the same into the sheriff's actual custody; and subdivision 3 provides that a levy must be made upon other personal property by leaving a certified copy of the warrant and a notice showing the property attached with the person holding the same; or, if it consists of a demand, other than as specified in the last subdivision, with the person against whom it exists.

To uphold this levy, therefore, it must appear that there was personal property of Hurley's which consisted of a demand other than upon a bond, a promissory note, or other instrument for the payment of money, against the defendant on the 8th day of October, 1888. The nature of the right of the holder of a policy of life insurance during the life of the assured has been much discussed and the exceptional nature of such an instrument repeatedly recognized. Generally stated, such a policy of life insurance may be said to be an agreement by the obligor to pay to a certain

person named a sum of money upon the death of the insured, subject to the condition that the premiums reserved are paid upon the day that they fall due, and subject also to other conditions as to the residence and occupation of the assured. Upon the death of the assured, the other conditions of the policy having been performed, there exists a demand for the payment of a sum of money; but until that contingency happens the obligation of an insurer is not that of a debtor, and unless the policy has a surrender value no demand exists against the insurer which, within the provisions of the section of the Code to which attention has been called, is subject to an attachment. In the development of the business of life insurance, other policies than a policy to insure the life of a person named have been issued, and it has been recognized that certain kinds of policy have a surrender value which the holder, or the persons to whom the insurance is payable, are entitled to receive upon the surrender of the policy before the obligation of the insurer has become fixed by the terms of the policy itself.

By the express provisions of the policy under consideration, it was agreed that, previous to the completion of the tontine dividend period, the policy should have no surrender value in cash or paid-up policy; and that if at that period the policy was not in force neither the assured nor those for whose benefit the policy was issued could have any right to receive anything from the insurer, but should forfeit all premiums that had been paid upon the policy.

This policy, therefore, prior to the maturity of the tontine dividend period had no surrender value, and the only right of any one to demand any sum of money from the defendant depended upon the continuance of the policy in force during the whole of that period, which was to be completed upon the 8th day of October, 1888, or the death of the assured prior to that time.

If the assured had died on the eighth day of October, the defendant would have been liable for the amount payable upon his death, and not liable under the option contained in the policy to be exercised upon the completion of this period.

There is no provision of the charter of the defendant or of any statute of this State relating to insurance in force when this policy was issued, or which affected the policy, to which our attention has been called, which prevented the parties to a policy of insurance of this

character from agreeing that, until the completion of a period fixed in the policy, there should be no surrender value and no obligation of the insurance company to the assured, or those for whose benefit the policy is issued.   All that the plaintiffs should acquire by virtue of a levy under this warrant of attachment was the right that the defendants in the action in which the attachment was issued had at the time of the service of the attachment upon the defendant, and that right must be determined by the agreement between the parties as evidenced by the policy of insurance which the defendant had issued.   If our construction of this policy is correct, it would follow that, upon the 8th day of October, 1888, when the attachment was served upon the defendant, there was no demand in favor of Hurley upon which the plaintiffs acquired a lien.

There is nothing in either of the cases relied upon by the plaintiffs which bears upon this question.   In *Kratzenstein* v. *Lehman* (19 App. Div. 228) the question presented was, whether the levy made by the sheriff by virtue of a warrant of attachment was sufficient to give him the custody of the property levied upon and thereby give the court jurisdiction to enter judgment in the action. The property levied upon was the interest of the defendant in the action in a policy of insurance upon his own life which had not yet matured but upon which premiums were to be paid, and in the prevailing opinion the conclusion is expressly based upon the fact that, under section 88 of the Insurance Law (Laws of 1892, chap. 690), the policy which was attempted to be levied upon had at the time of the levy a surrender value of $500, and it was assumed that, as the policy had such a surrender value, which the owner of the policy could enforce at any time, there was a demand within section 649 of the Code of Civil Procedure which was subject to attachment.   The question was, whether any property of the defendant was attached so that the court would have jurisdiction to enter judgment, and the question discussed was whether a policy of insurance was within subdivision 2 or 3 of section 649 of the Code of Civil Procedure.   It is clear that if there had been no surrender value to this policy when the attachment was served, so that the defendant in the action in which the attachment was issued had no right to demand from the insurance company any sum of money under its contract, the question presented would have been entirely different and the

reasoning upon which that decision was based would have no application..

In *Trepagnier & Brothers* v. *Rose* (18 App. Div. 393; affd. on opinion below in 155 N. Y. 637), as stated in the opinion, "The only question presented * * * is whether a fire insurance policy, under which a loss has occurred, is an instrument for the payment of money within the meaning of subdivision 2, section 649 of the Code of Civil Procedure. If it is, the sheriff has made no valid levy under his attachment, for he has failed to obtain possession of the written policy;" and it was held that, where a loss had been incurred and the amount was payable by the insurance company to the assured, the policy of insurance was not an instrument for the payment of money within the meaning of subdivision 2 of section 649 of the Code. In that case, when the warrant of attachment was served, it was conceded that the insurance company was indebted to the defendant in the action in which the attachment was issued, and the only question discussed was, whether the sheriff was required to take into his possession the policy of insurance before acquiring a valid lien upon the amount due by the insurance company. In this case, if our construction of this policy is correct, there was nothing due to Hurley when the warrant of attachment was served; no demand that Hurley could on that day enforce against the insurance company, and nothing, therefore, upon which a lien could be obtained.

The further question which has been argued by counsel in this case is whether. assuming that the warrant of attachment had been served after the completion of this tontine dividend period, the attaching creditor would have acquired the right to exercise this option which by the policy was given to the legal holder thereof upon the completion of this period. It is necessary to keep clearly in mind what right Hurley acquired under his contract with the defendant. Undoubtedly, upon the completion of this period, Hurley had the right to elect to surrender his policy and to withdraw its cash value. He also had the right to elect to accept a paid-up policy payable upon his death; but this right was exclusively vested in the legal holder of the policy. As between an attaching creditor and an insurance company, the attaching creditor is not the legal holder of the policy. It had only acquired a lien upon what-

ever demand there was due from the defendant to Hurley; but until the legal holder of the policy had exercised his option, there was nothing due, and no demand in favor of Hurley against the insurance company existed. It was proved in this case that subsequent to the 8th of October, 1888, Hurley, as the legal holder of the policy, elected to take a policy payable upon his death to his children, and that in pursuance of that election the defendant issued such a policy; but assuming that Hurley, as the legal holder of the policy, had the right to exercise that option, notwithstanding the service of the warrant of attachment, then this action cannot be maintained, which is to recover the amount that would have been due to Hurley had he exercised the option to withdraw the cash value of the policy upon the completion of the tontine dividend period. No such election was ever made by Hurley, who, by the agreement between himself and the company, was entitled to make the election or exercise the option. Neither the plaintiff nor the sheriff was ever in a position in which, as between them and the insurance company, they could make the election, and until that election was actually made, there was nothing due from the insurance company to Hurley.

By section 648 of the Code of Civil Procedure the attachment may be levied upon a cause of action arising upon contract, which belongs to the defendant and is found within the county, and in such a case the levy of the attachment thereupon is deemed a levy upon, and a seizure and attachment of, the debt represented thereby. By subdivision 3 of section 649 of the Code the levy is to be made by leaving a certified copy of the warrant and a notice showing the property attached with the person against whom the demand exists. Now, what is the demand that existed in favor of Hurley upon the completion of this tontine dividend period? It was the right to receive from the company either a sum of money or a policy of life insurance, as he should elect. When the election had been made, then a cause of action arose against the insurance company in favor of Hurley, which would, under *Kratzenstein* v. *Lehman* and *Trepagnier & Brothers* v. *Rose (supra)* be subject to the attachment, but, as I read these sections of the Code, the right to elect is neither a cause of action existing in favor of Hurley nor a demand against the insur-

ance company, which can be levied upon under a warrant of attachment. " Cause of action " is defined in Bouvier's Law Dictionary as " Matter for which an action may be brought.   *   *   *   A cause of action does not accrue until the existence of such a state of things as will enable a person having the proper relations to the property or persons concerned to bring an action." In the Encyclopædia of Pleading and Practice (Vol. 1, p. 116) it is said : " A cause of action is generally held to be a union of the right of the plaintiff and its infringement by the defendant." There could, therefore, be no cause of action until the insurance company was in default and had failed to comply with its contract, and there was certainly no failure of the defendant to comply with the contract until the legal holder of the policy had made the election provided for. The right to attach a cause of action would not give the right to attach this right to elect under section 648 of the Code. This right is to attach the property of the party against whom the attachment is issued, and this is recognized by the 3d subdivision of section 649 of the Code, which provides that the levy may be made upon other personal property if it consists of a demand other than as specified in the 2d subdivision of the section, by leaving a certified copy of the warrant and a notice showing the property attached with the person against whom it exists. It must, therefore, have been property which consists of a demand against this insurance company, and, certainly, a right to determine what particular form the obligation of the insurance company should be cannot be said to be property under this subdivision. When the right to receive the money is in existence, the demand then exists, and that demand would be subject to attachment ; but the right to determine is not such a demand. The election preceded the existence of a cause of action against the defendant, as it could not have discharged its obligation until the legal holder of the policy had exercised the right to elect. A tender of the cash value of the policy on the completion of the tontine dividend period would not have discharged the defendant unless the legal holder of the policy had elected to accept that option.

I think, therefore, that there was no valid levy by the sheriff of the city and county of New York upon the interest of Hurley in this policy ; that there was never a demand due by the defendant to Hurley or to the plaintiffs for the cash value of the policy, and that

the motion of the defendant to dismiss the complaint should have been granted.

It follows that the judgment and order appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., PATTERSON, HATCH and LAUGHLIN, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.