SQUARE BUTTE STATE BANK, APPELLANT, *v.* BALLARD, RESPONDENT.

(No. 5,034.)

(Submitted September 14, 1922.   Decided November 4, 1922.)

[210 Pac. 889.]

*Attachment—Promissory Notes—Payment—Contract of Guaranty not Contract for Direct Payment of Money.*

1. A contract guaranteeing "the collection and payment of the within note" was not one for the direct payment of money within the meaning of the attachment statute, and therefore an attachment issued in an action to enforce the guaranty was properly dissolved.

*Appeal from District Court, Chouteau County; John W. Tattan, Judge.*

ACTION by the Square Butte State Bank against F. C. Ballard, in which plaintiff caused a writ of attachment to issue. From an order dissolving the attachment, plaintiff appeals.    Affirmed.

*Messrs. Stranahan, Towner & Clark,* for Appellant, submitted a brief; *Mr. W. S. Towner* argued the cause orally.

Respondent contended that the contract of the defendant is separate and distinct from the liability of the maker of the note. We contend that respondent's liability is that of an irregular and accommodation indorser. The indorsement does not indicate any limitation whatsoever to his liability; he guarantees the collection and payment of the note: "A guarantor of a note is an. original promisor, and the only way he can be relieved from liability thereon is by the payment of the note." (*Chattanooga Sav. Bank* v. *Lumby,* 185 Ill. App. 111.) We do not contend, in fact we insist, that the use of the word "guarantee" by the respondent does not of itself constitute him a. guarantor. (See *Cole Mfg. Co.* v. *Morton,* 24 Mont. 58, 60 Pac. 587; 3 R. C. L. 1155; *Home Sav. Bank* v. *Shallenberger,* 95 Neb. 593, 146 N. W. 993; *Elgin City Banking Co.* v. *Hall,* 119 Tenn. 548, 108 S. W. 1068.) By the terms of respondent's indorsement he is primarily liable for the payment of the note in question in accordance with its terms. (*First State Bank* v. *Lang,* 55 Mont. 146, 9 A. L. R. 1139, 174 Pac. 597.) If there is any doubt as to the capacity in which the respondent signed the note in question, he is to be deemed an indorser. (Rev. Codes 1921, sec. 8424.)

The contract of respondent being that of a general indorser and his liability the same, his contract was one for the direct payment of money within the meaning of the attachment statutes. This being so, the district court in considering respondent's motion to dissolve attachment should not have gone "further than to ascertain whether the action is upon a contract, express or implied, for the direct payment

of money." (*Heffron* v. *Thomas*, 61 Mont. 10, 201 Pac. 572.)
And ·if the complaint did not state a cause of action the .court
should have determined whether it could be made to state a
cause of action by amendment or supplement, and if so, the
attachment should not be discharged. (*Savage Tire Sales Co.*
v. *Stuart*, 61 Mont. 524, 203 Pac. 364.)

*Mr. Thomas F. Arnett* and *Messrs. Miller & Wiley*, for
Respondent, submitted a brief; *Mr. C. W. Wiley* argued the
cause orally.

By every rule and principle of law this is what is termed
a contract of guaranty. The respondent is not a surety. He
is not an indorser. He is not a joint maker. The text-books
and decisions on construing the contract of guaranty in-
variably establish the following principles: (1) That a con-
tract of guaranty is an independent contract. (2) That it
must be strictly construed and its precise terms and those
only followed. (3) That the guarantor is not a contractor
with the maker of the note nor to be held as a surety or in-
dorser. (4) That because he receives no consideration for
signing the note as guarantor he is a favorite of the law and
can only be bound by the strict terms of his independent
contract of guaranty. (See *Cole Mfg. Co.* v. *Morton*, 24 Mont.
58, 60 Pac. 587; *Northern State Bank* v. *Bellamy*, 19 N. D.
509, 31 L. R. A. (n. s.) 149, 125 N. W. 888; 2 Parson on
Bills and Notes, 119; *Coleman* v. *Fuller*, 105 N. C. 328,
8 L. R. A. 380, 11 S. E. 175; *Rouse* v. *Wooten*, 140 N. C. 557,
111 Am. St. Rep. 875, 6 Ann. Cas. 280, 53 S. E. 430; Ogden
on Negotiable Instruments, sec. 220; *Aud* v. *Magruder*, 10
Cal. 282; *Riggs* v. *Waldo*, 2 Cal. 485, 56 Am. Dec. 356; *Ford*
v. *Hendricks*, 34 Cal. 673; *Pierce* v. *Kennedy*, 5 Cal. 138;
*Lamm & Co.* v. *Colcord*, 22 Okl. 493, 19 L. R. A. (n. s.) 901,
98 Pac. 355.) In the last case it is said: "The guarantor is
entitled to strict rule of construction and cannot be held
beyond the precise terms of his contract." (1 Brandt on
Suretyship & Guaranty, 2d ed., pp. 134, 135.)

Can an attachment rightfully issue against the guarantor under his contract? Is the contract of a guarantor one for the direct payment of money on a contract either express or implied? We have been unable to find a case exactly in point. This court has held that in a suit on a judgment the judgment creditor cannot attach property of the judgment debtor, because it is not an express or implied promise for the direct payment of money. The same has been held by other courts with reference to suit against a surety, and that attachment would not lie. Respondent, in his contract, does not promise to pay the note. He simply guarantees that the maker of the note will pay the same, and it is for this court to determine whether the respondent's contract of guaranty in this case is such as to subject the property of respondent to attachment. We also cite *Heffron* v. *Thomas,* 61 Mont. 10, 201 Pac. 572, on this branch of the subject. (*Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 64 L. R. A. 128, 74 Pac. 197.)

MR. JUSTICE COOPER delivered the following opinion.

This action was instituted to enforce the defendant's guaranty of the collection and payment of a promissory note in the sum of $667, executed and delivered to plaintiff by one Otto C. Hoge, and due October 1, 1921.

The allegations of the complaint material to this appeal are substantially these: That at the time and place at which the note was executed by the maker, in consideration of its acceptance by the plaintiff, defendant for value received executed the guaranty; that no part of the note has been paid, and, according to its tenor, the whole thereof is "due, owing, and payable from defendant to plaintiff." Then follow averments that Hoge, the maker, has become insolvent and his property subjected to attachment, that suit has been instituted against him by one Erma Hoge, and that, under authority contained in the note, plaintiff has elected to, and does now, declare the note to be immediately due and payable, and that

prior to the commencement of this action it had so notified [1] the defendant. When the complaint was filed, attachment proceedings were instituted and the defendant's property seized thereunder by the sheriff. The defendant appeared and demurred to the complaint upon the ground that the action had been brought before the note became due, and that there was a misjoinder of parties because Hoge had not been made a defendant. He also filed a motion to quash the writ of attachment and to dismiss the proceedings, contending that the defendant's undertaking did not constitute a contract for the direct payment of money within the meaning of the attachment statutes. The plaintiff appeals from the order of the district court dissolving the attachment.

The truth of all the material averments of the complaint is admitted by the demurrer. There are in the record no facts or circumstances which would give the agreement an aspect other than appears upon its face. The intent of the parties is to be gathered from a literal rather than a technical interpretation of the instrument. The note may be read with the guaranty, not for the purpose of fixing liability upon the defendant, but for the light it may shed upon the entire transaction. By his undertaking the defendant insured the "collection and payment" of the note, but did not agree to be bound as a joint maker thereof, nor as an indorser. Had he intended to assume that relation he could easily have so declared. The note and the guaranty are distinct and independent of each other.

The conditions attached to the note read as follows: "In case of suit to recover herein, a reasonable attorney's fee, to be fixed and allowed by the court, shall be taxed and collected as a part of the costs of the action. Any interest not punctually paid when due shall become a part of the principal and thereafter bear the same rate as the principal debt. The makers and indorsers hereby waive presentment, demand, protest and notice thereof, and agree that in event of insolvency of either makers or indorsers, or the institution of suit or

attachment against them or either of them, or the mortgaging of any property by the makers or indorsers, this note may be declared to be immediately due and payable." To these Hoge subscribed and bound himself to perform them. The defendant did not—the note was not his contract. His was the agreement of a guarantor. The attachment in this case cannot be maintained unless the defendant's own promise was so free of contingencies that by it an absolute obligation to pay a definite sum was acknowledged. At best, assuming that we may read both contracts together, defendant's promise was contingent upon Hoge's complete default, and, as plaintiff's counsel interpreted it, was to become absolute only when extraneous conditions prompted it to declare the note immediately due and payable. Until then the defendant's undertaking was in abeyance, executory merely.

Defendant's contract of guaranty is: "For value received, I hereby guarantee the collection and payment of the within note." Its language leaves no doubt in what capacity the defendant intended to be bound, if the word "guarantee" is left in the contract and given its ordinary meaning as it must be. (Rev. Codes 1921, sec. 10519.) Where the signature upon an instrument is so placed that it is not clear in what capacity the person intended to sign an instrument, he is to be deemed an indorser. (Sec. 8424.) And a person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates, by appropriate words, his intention to be bound in some other capacity. (Sec. 8470.) The word "guarantee" clearly denotes the nature of his obligation. Indeed, what word better calculated to express his intention could he have employed? Webster defines the word "guarantee" as follows: To become bound to answer for, or secure the payment or fulfillment of; to warrant the performance of.·

What are the obligations of a guarantor? Chitty gives the common-law definition of a guaranty as "a collateral en-

gagement to answer for the default or miscarriage of another, as distinguished from an ordinary and direct engagement of the party's own act." Our Code, section 8171, defines a guaranty as "a promise to answer for the debt, default, or miscarriage of another person." Section 8181 declares that a guaranty is to be deemed unconditional, unless its terms import some condition precedent to the liability of the guarantor; and section 8182 that a guarantor of payment or performance is liable to the guarantee immediately upon default of the principal without demand or notice.

A guarantor's agreement is to pay if the principal does not or cannot. He does not join in the contract, but in an independent · undertaking promises that the principal will perform his agreement, and if he does not then he (the guarantor) will do it for him. If the promise is that the principal will pay, or that the debt is collectible, then the liability is not immediate and does not fix upon the promisor a liability from the beginning, but only upon the default of the principal ·to do what he has agreed to do. In such a case the promisor is a guarantor, and his liability does not start with the agreement, except as a contingent liability, and that is established for the first time by the default. (Stearns on Suretyship, 2d ed., sec. 6.) "An absolute guaranty is an unconditional undertaking on the part of the guarantor that the maker will pay the note or debt. A conditional guaranty is an undertaking to pay if payment cannot, by reasonable diligence, be obtained from the principal." (Pingrey on Suretyship & Guaranty, sec. 350.) A guaranty is a promise to answer for the payment of some debt, or the performance of some duty in the case of failure° of another person who is himself, in the first instance, liable to such payment or performance. The undertaking is the guarantor's own separate contract. (14 Am. & Eng. Ency. of Law, pp. 1128, 1129; 2 Parsons on Bills & Notes, p. 117; Daniel on Negotiable Instruments, sec. 1733; 20 Cyc. 1739; see, also, *Masters* v. *Boyes,* 44 Okl. 526, 145 Pac. 363, where the cases are collected.)

Cases involving the rights and liabilities of a guarantor have arisen upon such a variety of facts and conditions that one case is rarely authority in support of another. In most of the decisions the divergence in opinion begins with the inquiry. When and under what circumstances does absolute liability attach? The distinction between the terms "guaranty of collection" and "guaranty of payment," when only one of the phrases is used, is clear. (14 Am. & Eng. Ency. of Law, 2d ed., p. 1141; 20 Cyc. 1450; *Johnson* v. *Charles B. Norton Co.,* 159 Fed. 361, 86 C. C. A. 361; *Jones* v. *Ashford,* 79 N. C. 172; note to *Fall* v. *Youmans,* 64 Am. St. Rep. 393.) As stated above, the words employed here are, "I hereby guarantee the collection and payment of the within note." This phrase is not to be found in any case, at least so far as a thorough search of the authorities discloses. It is to be assumed that the words employed were to subserve some purpose, and they are all to be given effect, if possible, in order to carry out the intent of the parties. Webster defines the word "collection" as "the act or process of receiving or enforcing payment due, as for taxes or personal debts, or the amount of such payment." The Century Dictionary's definition is: "The act of receiving or collecting payment of dues, public or private, as for taxes, customs duties or personal debts." The word "payment" is defined by Webster as "the satisfaction and discharge of an obligation in money or an equivalent." In the Century Dictionary, it is defined as "the satisfaction by or in the name of the debtor to the creditor of what is due, with the object of putting an end to the obligation." The two are not, therefore, words of similar import.

When the defendant undertook his obligation, the plaintiff and Hoge had reduced their agreement to writing, and it had been signed, executed, delivered and accepted by plaintiff. The defendant's undertaking merely fortified Hoge's promise. The guaranty was a separate contract, creating an independent obligation which could not become absolute until Hoge had defaulted and the plaintiff had elected to take advantage

of the stipulations in the note by declaring it due and payable immediately. Then it was that defendant's liability took effect. But it did not from the beginning admit an existing debt due from him to plaintiff, which, if offered in evidence, unaided by facts extrinsic to the agreement, could be regarded as distinct "from all other contracts for the payment of money," so as to give the word "direct" the meaning conveyed by the statute, and imputed to it in *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 64 L. R. A. 128, 74 Pac. 197. "A direct payment [of money] is one which is absolute and unconditional as to time, amount, and the persons by whom and to whom it is to be made." *(People* v. *Boylan* (C. C.), 25 Fed. 595; *Carter* v. *Bankers' Ins. Co.,* 58 Mont. 319, 192 Pac. 827; *Heffron* v. *Thomas,* 61 Mont. 10, 201 Pac. 572.) The defendant's contract was not therefore one which recognized upon its face the existence of a debt which he was to pay absolutely and unconditionally at a specific time, but one which might never ripen, and one which could only mature upon the happening of one or more of the contingencies specified in the note, the election by the plaintiff to declare it due because of such occurrence, and its declaration that it had so exercised the option accorded to it in the Hoge agreement.

The defendant in the last clause of his contract consented "to any extension of time of payment, or any renewal of this note, and waive demand, protest and nonpayment thereof." Notwithstanding this provision, the plaintiff before commencement of the action notified the defendant of Hoge's default, thus interpreting the guaranty as a contingent obligation, not specific as to time nor terms, and therefore not one for the direct payment of money.

I therefore think that defendant's undertaking was not one for the direct payment of money within the meaning of the attachment statutes, and that the order dissolving the attachment should be affirmed.

In support of its theory that, by signing the paper as he did, the defendant became an indorser of the note—an origi-

nal promisor directly liable thereon, plaintiff cites *Home Sav. Bank* v. *Shallenberger*, 95 Neb. 593, 146 N. W. 993, and *Elgin City Banking Co.* v. *Hall*, 119 Tenn. 548, 108 S. W. 1068. In neither of those cases was the plaintiff an original promisee, as in this case. They indorsed the notes and transferred them for value, thus making themselves direct promisors. The same may be said of *Armstrong* v. *Slick*, 14 Idaho, 203, 93 Pac. 775. The defendants were the payees, and they indorsed and transferred the notes for value, with a guaranty of payment added. The court held that to be a contract for the direct payment of money by the indorsement thereof. The relation of debtor and creditor was created immediately upon the indorsement and transfer. The distinction is too plain to require discussion.

The order is affirmed.

MR. JUSTICE HOLLOWAY: I concur in the result announced by MR. JUSTICE COOPER, but I do not subscribe to all that is said in his opinion.

Ballard was not a party to the note in question, and the debt evidenced by the note was not his debt. He did, however, agree to be responsible for the payment of the debt by Hoge, the maker of the note. Whether his contract measures up to the standard prescribed for a contract of guaranty by authorities from other jurisdictions is beside the question. Our Codes declare the law of this state with respect to the matters to which they relate, and section 8171, Revised Codes of 1921, provides: "A guaranty is a promise to answer for the debt, default, or miscarriage of another person." That definition alone determines the character of Ballard's contract. He is a guarantor, and his agreement is separate and distinct from the contract evidenced by the note. His liability is to be measured by the terms of his contract and the law applicable thereto.

Speaking generally, a guaranty of payment is termed an absolute guaranty, while a guaranty of collection is a conditional guaranty. In this instance Ballard guaranteed both the payment and the collection, but it is immaterial, for the

purposes of this appeal, whether his guaranty is absolute or conditional, for the result would be the same in either instance. If it be treated as a conditional guaranty, his liability would not attach until plaintiff had exercised due diligence to collect the amount due from Hoge and had failed (28 C. J. 951, 970), or, in other words, his liability was conditional and contingent and not direct. If it be accepted as an absolute guaranty, his liability would not arise until the default of the maker of the note (sec. 8182, Rev. Codes 1921), or, in other words, plaintiff could not state a cause of action against Ballard unless and until the maker failed to pay the note when due. By his contract Ballard did not admit an existing debt due from him, and if Hoge paid the note Ballard's liability would never arise; hence his obligation to pay was collateral, conditional and contingent. Whether his contract of guaranty is absolute or conditional is immaterial, for it is not a contract for the direct payment of money within the meaning of our attachment statute. If any proposition of law can be deemed settled in this state, this one ought to be beyond further controversy, *viz.:* That the contracts contemplated by the attachment statute are such only as require the payment of a definite sum unconditionally and absolutely. In principle, the instant case cannot be distinguished from *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 74 Pac. 197, and the doctrine of that case has been approved in *Beartooth Stock Co.* v. *Grosscup,* 57 Mont. 595, 189 Pac. 773, *Carter* v. *Bankers' Ins. Co.,* 58 Mont. 319, 192 Pac. 827, and in *Heffron* v. *Thomas,* 61 Mont. 10, 201 Pac. 572.

ASSOCIATE JUSTICES FARR and GALEN concur in the views expressed by MR. JUSTICE HOLLOWAY.

*Affirmed.*