MINNEAPOLIS THRESHING MACHINE CO., RESPONDENT,
v. JAMEISON ET AL., APPELLANTS.

(No. 5,361.)

(Submitted November 22, 1923.  Decided February 28, 1924.)

[223 Pac. 893.]

*Promissory Notes—Guaranty—Liability of Guarantor—When
Fixed—Mortgaged Chattels—Sale—Application of Proceeds.*

Promissory Notes—Guaranty—When Liability Fixed.
1.  Where a purchase-money mortgage of farm machinery provided
that on default of the purchaser in payment of any part of the
principal of the notes given by him, the seller was authorized to take
possession of the machinery and sell it at public auction without
further demand, or at a private sale with or without notice, the
liability of the guarantors of the notes became fixed when the buyer
failed to make payment at maturity of the notes.

Same—Proceeds of Mortgaged Chattels—When Guarantors Deprived of
Right to Direct Application of Payment.
2.  Where guarantors of notes given in payment of farm machinery
had waived all claim to any rights under the mortgage given by
the buyer on it, and the mortgage provided that the seller could apply
the proceeds of the sale of the mortgaged property to other notes
not guaranteed and not then due, they were deprived of the right to
direct as to how the proceeds should be applied.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

ACTION by the Minneapolis Threshing Machine Company
against Fred R. Jameison, C. E. Benson and Ida E. Benson.
Judgment for plaintiff and the two last-named defendants
appeal.  Modified and affirmed.

*Mr. Geo. T. Baggs* and *Mr. E. C. Kurtz,* for Appellants,
submitted a brief; *Mr. Baggs* argued the cause orally.

*Messrs. Murphy & Whitlock,* for Respondent, submitted a
brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

This action was brought by the plaintiff against the defendants Fred R. Jameison, as maker, and C. E. and Ida E. Benson, as guarantors, upon two notes dated August 30, 1911, each
in the sum of $400 and interest.  They were given to plaintiff

with two others of like date and amount in payment of a second-hand threshing outfit purchased by Jameison. It was formerly the property of the Bensons. The admissions in the pleadings and the facts agreed upon are these: On August 30, 1911, the plaintiff, through the Stevensville Trading Company, its local agent, sold the old Benson machinery to Jameison for $1,600, and the four promissory notes above mentioned, signed by Jameison as maker, and the Bensons as guarantors, were given to plaintiff as evidence of the purchase price. At the time of the sale it was agreed that if the outfit did not do satisfactory work, a new outfit would be furnished Jameison in exchange therefor. The four original guaranteed notes, as they will hereafter be called, were all dated August 30, 1911, and were numbered and were due as follows: 84,502, November 15, 1911; 84,503, November 15, 1912.; 84,504, November 15, 1913; and 84,505, November 15, 1914. There was written on the back of each note the following contract of guaranty:

"For value received I hereby guarantee the payment of the within note at maturity, or any time thereafter, and hereby waive presentment, protest, demand and notice of demand and nonpayment and suit against the maker, and consent that the payment of this note may be extended from time to time without affecting my liability, and hereby waive diligence on the part of any holder thereof in collecting the said note, and any defense arising out of lack of diligence in enforcing the collection thereof, and hereby waive all claim of any rights under the mortgage given by the payer to secure said note until the payee receives pay in full for the machinery sold and for which this and other notes represent the purchase price.

"C. E. BENSON.
"IDA E. BENSON."

Jameison took possession of the old machinery and gave the plaintiff a chattel mortgage thereon to secure the guaranteed notes. A year later, the machinery not doing satisfactory work, Jameison without the consent of the Bensons, turned

in the old separator for a new one at the agreed price of
$1,175. The plaintiff allowed Jameison $170 on the old sep-
arator which was paid to the trading company as a commission
upon the sale of the new separator, leaving a balance on the
purchase price of the new machinery of $1,005. This amount
was incorporated into four notes, all dated August 20, 1912,
numbered, and in the following amounts, respectively; 89,512,
$125, due December 1, 1912; 89,513, $377.50, due December 1,
1913; 89,514, $125, due December 1, 1914; and 89,515, $377.50,
due December 1, 1915. These notes were signed by Jameison
as maker, and the trading company as indorser. They will be
hereinafter referred to as the indorsed notes. Upon the last
outfit purchased, Jameison gave a chattel mortgage to secure
the indorsed notes and the guaranteed notes as well. On No-
vember 1, 1913, Jameison had made no payments on his pur-
chase, and at plaintiff's request he gave an additional note
in the sum of $800 as collateral to all the other notes, and
with several other persons signed it as maker. The sum of
$382, received by Jameison for threshing, was applied as fol-
lows: $29.40 on note 89,512, and the balance upon note 89,513,
two of the indorsed notes. On December 7, 1914, no other
payments had been made, and the plaintiff took possession of
the mortgaged property and sold it for $1,100, the proceeds
of which, after deducting the costs, amounted to $1,071.60.
This was applied as follows: $505.45 on note 84,502, and
$82.53 on note 84,503, two of the guaranteed notes; and $36.62
on note 89,513, and 447 on note 89,515, two of the four in-
dorsed notes. The two remaining guaranteed notes are the
subject of this action.

Jameison failed to appear in the action and judgment was
taken against him. The action proceeded against the Bensons
upon their guaranty. The trial court found for the plaintiff
and gave judgment against the Bensons on the two notes as
guarantors. They have appealed.

In their answer the Bensons allege that the trading company
assigned to them seven of its trade certificates, representing
earned commissions more than enough to satisfy the guaran-

teed notes. The sum of the first was $348, the second $174, and both were on the sale of an engine to Webber Bros.—a transaction not connected with the subject of the present action. The third $476.25; the fourth $328; the fifth $237— each evidencing commissions on guaranteed notes 84,503, 84,- 504 and 84,505. The sixth $43, and the seventh $43.25—evidencing commissions on a sale in which indorsed notes 89,513 and 89,514 were given.

The reply denies that the seven trade certificates were assigned to the Bensons, and alleges that the commissions earned on the Webber certificates 23,127 and 23,128, totaling $581.65, were credited upon notes other than those involved in this action, and without notice or knowledge of their assignment, and that no commissions were ever earned on the other five certificates.

The paragraph of the dealer's contract upon which the trade certificates were issued reads: "It being hereby expressly agreed that no commission is earned, or to be paid on orders not settled for in accordance with the terms, conditions and agreements contained herein, or prescribed by the company, or in anywise appertaining thereto, or on orders not filled, or on machines or repairs donated, returned, taken back, foreclosed, abandoned or condemned, and that should any commissions have been paid on any such sale or sales as above described, the dealer shall refund such commissions to the company and turn over any property or the proceeds thereof that may have been taken in trade on such sale."

The trade certificates were all in the following form:

"The Minneapolis Threshing Machine Co.

"Dealer's Commission Certificate.

"348.00.                                    No. 23127.

"West Minneapolis, Hopkins, P. O. Minn.,
"Dec. 30, 1911.

"There will be due Stevensville Trading Co., dealer at Stevensville, Mont., the sum of three hundred forty-eight and no/100 dollars upon the return of this certificate to the under-

signed at its office in West Minneapolis, Hopkins, P. O. Minn. properly endorsed at any time after payment in full is received in cash by the Minneapolis Threshing Machine Co. at his home office of note No. 84,570 given by Webber Bros. due Nov. 15, 1912, to said company, together with a proportionate part of the interest received thereon in cash as above conditioned at the rate provided in said note, less the *pro rata* cost of collection thereof, and provided that this certificate is issued and accepted subject to each and all of the provisions, terms and conditions set out and contained in a certain dealer's contract made by the said above-named dealer, and the undersigned for the season of 1911."

The action was defended in the court below upon the theory: (1) That the commissions earned by the trading company and assigned to the Bensons more than offset the amount of the notes sued on, principal and interest, and satisfied them; (2) that the Bensons were entitled to have the property bought of the plaintiff by Jameison, covered by the first mortgage, sold under its terms and the proceeds of the sale applied to the satisfaction of the guaranteed notes; (3) that by trading the old separator for a new one, and taking another mortgage upon the property so constituted, the contract of guaranty was so altered as to discharge the guarantors.

On the other hand, plaintiff contends that: (1) When the Bensons signed the contract of guaranty they waived the right to insist upon a sale of the property mortgaged by Jameison to it, and the right to have the proceeds applied to the payment of the guaranteed notes. (2) Under the provisions of the trade certificates and plaintiff's contract with the Stevensville Trading Company, the commission claimed could not be earned until after the notes upon which it was given were paid in cash at the office of the plaintiff in Minneapolis.

By the terms of both mortgages, in case of Jameison's default in the payment of any part of the principal of the notes, the plaintiff was authorized to take possession of the property and "sell it at public auction without demand of performance, or at private sale with or without notice." This it did, and

no complaint is made as to the regularity or validity of the proceedings. Appellants in their guaranty agreed to answer for the debt, default or miscarriage of Jameison (Rev. Codes 1921, sec. 8171) immediately upon his default in the payment of the notes (*Id.*, sec. 8182). The promise of the Bensons, therefore, became absolute and their liability fixed when Jameison failed to pay the notes at maturity. (*Square Butte State Bank* v. *Ballard*, 64 Mont. 554, 210 Pac. 889.)

Respecting the trade certificates assigned the following is deducible from the record: The commissions represented by the two Webber certificates ($581.65) were actually earned; $434.19 of this amount plaintiff applied upon guaranteed note 84,503 and the rest ($147.46) on indorsed note 89,514. The commissions on the remaining five trade certificates transferred to the Bensons were not earned, because the notes upon which they were issued were not paid at the Minneapolis office of the plaintiff and their assignment carried to the Bensons no value at all.

That the Bensons were not subjected to any additional risk [2] by the exchange of parts of the old machinery for new ones is quite clear. By the provisions of the mortgage the plaintiff was "expressly authorized" at its option "to apply the proceeds of any sale" of the mortgaged property to the payment "of such notes as are not indorsed, guaranteed or otherwise secured, * * * notwithstanding that any of said notes may not then be due by the terms thereof." This provision of itself was enough to deprive the guarantors of the right to give direction as to how the proceeds of a sale of the mortgaged property should be applied. (30 Cyc. 1251.) Having by their own guaranty waived "all claim of any rights under the mortgage," the plaintiff was not obliged to apply the moneys derived from the sale of the property to the guaranteed notes.

Plaintiff did, however, despite the waiver, apply $587.98 of the $1,071.60 realized at the sale on two of the guaranteed notes. And while there was no proof to support the alleged assignment of the seven trade certificates pleaded in the an-

swer, the plaintiff credited $434.19 of the Webber commission of $581.65 upon two of the guaranteed notes, and the balance ($147.46) upon indorsed note 89,514. The conclusion of the court was that the commission earned upon the two Webber certificates was properly applied, although the plaintiff was under no obligation to give defendants credit therefor, and that the remaining five certificates were void. The plaintiff having, in the agreed statement, recognized the transfer of the Webber certificates to the Bensons, the remaining $147.46 of the earned commission should have been credited on the notes in suit, and not upon indorsed note 89,514. To this extent the conclusion of the trial court was wrong. In all other respects it was right.

The judgment will be modified by crediting the sum of $147.46 and interest on the notes in suit, and as so modified will stand affirmed.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.