ANCIENT ORDER OF HIBERNIANS, Division No. 1, OF ANACONDA, APPELLANT, v. SPARROW ET AL., RESPONDENTS.

(No. 1,701.)

(Submitted October 21, 1903. Decided November 16, 1903.)

*Attachment—Construction of Statute—Action on Bond—Con-tract for the Direct Payment of Money—Statute Borrowed from Another State—Rule of Construction.*

1. The decision of the court of another state construing a statute thereof will not be followed by the court of a state borrowing such statute unless the decision appeals to it as founded on right reasoning.
2. An action against sureties on a bond conditioned to be void if the principal performed his contract is not an action on a contract for the "direct pay-ment" of money, within Code of Civil Procedure, Section 890, authorizing an attachment in such an action.

*Appeal from District Court, Deer Lodge County; Welling Napton, Judge.*

ACTION by the Ancient Order of Hibernians, Division No. 1, of Anaconda, Montana, against Charles W. Sparrow and others. From an order dissolving an attachment, plaintiff appeals. Affirmed.

*Mr. T. O'Leary,* and *Mr. H. R. Whitehill,* for Appellant.

*Mr. George B. Winston,* and *Messrs. Rodgers & Rodgers,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On November 16, 1898, the Ancient Order of Hibernians, Division No. 1, of Anaconda, Montana, entered into an agreement with Edward B. White, a contractor and builder, by the terms of which White agreed to furnish the materials and erect a building for the order in Anaconda, for which he was to be paid the sum of $13,575, the building to be completed prior to December 1, 1898, and all the work to be done according to plans and specifications which were furnished. For the faithful performance of that contract White executed his indemnity bond in the sum of $3,500, with respondents Sparrow, Wegner, Radefeld and Thiefenthaler as sureties, the condition of the undertaking being that, "if the said Edward B. White shall in all things comply with the contract in letter and spirit, and turn over to the said A. O. H. Div. No. 1, of Anaconda, the said building fully finished and completed in all its parts in strict compliance with the said plans and specifications,   *   *   * then the above obligation to be void, otherwise to remain in full force and virtue."

The complaint alleges that, although White entered upon the work and performed a part of it, he abandoned the same before it was completed, and that the appellant was compelled to complete the same at a cost of more than $4,500 over and above the contract price of the building. The complaint then alleges that prior to the commencement of this action this appellant recov-

ered a judgment against White for the breach of said contract in the sum of $5,440, and that White was soon afterwards adjudged a bankrupt without assets. The prayer of the complaint is for the full amount of the bond.

At the time of the commencement of this action and the issuance of summons, upon a proper affidavit being made and the undertaking required by law being given, the clerk of the district court issued a writ of attachment under which the sheriff of Deer Lodge county levied upon property belonging to the defendants. Thereafter the defendants appeared, and moved the court to discharge the attachment upon the ground, among others, that the action is not founded upon a contract for the direct payment of money within the meaning of Sections 890 and 891 of the Code of Civil Procedure. This motion was by the court sustained, and the attachment dissolved. From the order dissolving the attachment this appeal is prosecuted.

Section 890 of the Code of Civil Procedure provides as follows: "Sec. 890. The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, * * * as follows: In an action upon a contract, express or implied, for the direct payment of money. * * *"

Without question this is an action upon an express contract, and the only difficulty to be met with is in the proper construction of the phrase "for the direct payment of money."

So far as we are advised, California and Oregon are the only other states having the same statutory provision. Colorado had prior to 1895. Sections 120 and 121 of the California practice act (St. 1851, p. 68, c. 5; Sections 537, 538, Code Civ. Proc. 1897) contain the same provisions as our Section 890, above, and those sections received construction by the Supreme Court of California in *Hathaway* v. *Davis*, 33 Cal. 161; where by a divided court it was held that an ordinary appeal bond was a contract for the direct payment of money within the meaning of Sections 120 and 121, above. However, the majority of the

court characterized its own opinion as not being very satisfactory. This decision was made the sole ground for holding that a bail bond was likewise a contract for the direct payment of money (*City and County of San Francisco* v. *Brader,* 50 Cal. 506), and upon the authority of these two cases the same court in *County of Monterey* v. *McKee,* 51 Cal. 255, held the official bond of the county treasurer was such a contract as is contemplated by the attachment statute.

It is contended by appellant that under the rule of construction that, where a statute is adopted from another state by this state, it is adopted with the construction given it by the highest court of that state, the decision in *Hathaway* v. *Davis* is conclusive in this instance.

It may be true, as assumed by counsel for appellant, that our Section 890, above, was borrowed from California, and yet that is only an assumption, as there is nothing whatever to indicate that it is a fact. The expression "for the direct payment of money" does not appear in our attachment laws from January 15, 1869, to the adoption of the Code in 1895, at which latter date at least two other states had substantially the same statutory provision as California. However, this court will not blindly follow the construction given a particular statute by the court of a state from which we borrowed it, when the decision does not appeal to us as founded on right reasoning. We understand the rule to be "that the construction put upon statutes by the courts of the state from which they are borrowed is entitled to respectful consideration, and that only strong reasons will warrant a departure from it" (Endlich on Interpretation of Statutes, Sec. 371; *Oleson* v. *Wilson,* 20 Mont. 544, 52 Pac. 372, 63 Am. St. Rep. 639) ; or, as was said in *Stadler* v. *First National Bank,* 22 Mont. 203, 56 Pac. 114, 74 Am. St. Rep. 582: "When a particular statute has been adopted by this state from the statutes of another, after a judicial interpretation (suited to our condition) has been placed upon it by the parent state, the courts of this state are bound by the interpretation of the courts of the state whence it was adopted, or will

at least accord respectful consideration to such interpretation, and depart from it only for strong reasons."

Prior to 1895 Colorado had an attachment statute which provided that the writ should issue upon the plaintiff making an affidavit "that the action is brought upon an overdue promissory note, bill of exchange, or other written instrument for the direct and unconditional payment of money only or upon an overdue book account." (Mills' Ann. Code, Sec. 92.) This section received consideration in *Hurd* v. *McClellan*, 14 Colo. 213, 23 Pac. 792, which was an action upon an appeal bond, and reference is there made to the case of *Hathaway* v. *Davis*, above, and the majority opinion disapproved. The Supreme Court of Colorado, after holding that such appeal bond does not come within the purview of Section 92, above, says: "In this case the obligation assumed by the sureties was not direct, but collateral. They could be charged only upon failure of the principal to pay. If he failed to pay the judgment appealed from, if affirmed by this court, then there would be a breach of the condition of the bond upon which a cause of action might be predicated."

In *People* v. *Boylan*, 25 Fed. 595, Hallett, J., in construing the above section of the Colorado Code in an action upon an administrator's bond, says: "A direct payment is one which is absolute and unconditional as to time, amount and the persons by whom and to whom it is to be made. And a written instrument which provides for such payment is one which expresses those terms fully. It is needless to point out the difference between such an instrument and an administrator's bond." Commenting on the majority opinion in *Hathaway* v. *Davis*, *supra*, Judge Hallett says: "It is to be observed, also, that in the only case cited from that state (California) in which the question was discussed the views expressed were not altogether satisfactory to the court. And the opinion will hardly be more convincing to the profession than it was to the court."

In *Hathaway* v. *Davis*, above, Sawyer, J., dissenting, says: "The undertaking upon which a recovery is sought is 'that the

appellants will pay all damages and costs which may be awarded
against defendant on the appeal, not exceeding three hundred
dollars.' This appears to me to be an undertaking that another
party shall pay, and not that the party himself will pay. There
is no promise that the defendants themselves will pay any money
at all, and consequently no contract on their part for the direct
payment of money. On a failure of the appellants in the suit
to pay in accordance with the terms of the undertaking, there
is a breach, it is true, and the party to the undertaking is liable
for damages for the breach. But the liability is strictly for
damages, and not on his own contract that he himself will pay
money. For these reasons I think there was no contract, ex-
press or implied, on the part of the defendant for the direct pay-
ment of money within the meaning of the attachment law, and
that an attachment is unauthorized." It is to be noted that this
dissenting opinion is quoted with approval in *Hurd* v. *McClel-
lan,* above.

The Code of Civil Procedure of New York (Section 635)
provides for the issuance of an attachment "in an action to re-
cover a sum of money only as damages for a breach of contract,
express or implied," and Section 649 provides the manner of
levying the writ. Construing these sections, the supreme court,
in *Trepagnier & Bros.* v. *Rose,* 18 App. Div. 393, 46 N. Y.
Supp. 397, said: "But we are clear that, to be an instrument
for the payment of money, it must be an instrument which ac-
knowledges an absolute obligation to pay, not conditional or
contingent; one, the execution of which being admitted, it would
be incumbent on the plaintiff, in an action to enforce it, only
to offer the instrument in evidence to entitle him to a recovery
—in other words, an instrument that admits an existing debt.
We think that this is the correct line which divides such instru-
ments from other written contracts which contain obligations
on the part of one party or the other to pay money, such as
agreements of sale, hiring, leases, building contracts, etc."

One of the definitions given in Webster's Dictionary for the
word "direct" is "immediate; express; unambiguous; con-
fessed; absolute"; and it does seem that, if the term is to be

given any meaning, as used in our attachment statute, it must distinguish a particular class of contracts for the payment of money from all other contracts for the payment of money. In other words, that class of contracts which provide for the direct payment of money must differ somewhat from all other contracts for the payment of money, or the term "direct" has no meaning whatever.

The term first appeared in our attachment statute in 1866 (Act Third Leg. Assem. approved Dec. 3, 1866, p. 62, c. 12, Sec. 1). These legislative enactments were annulled by Act of congress (14 Stat. at Large, 427). Practically the same provision was re-enacted by the Fourth legislative assembly (Laws of 1867, page 156). This Act was amended by Act of Fifth legislative session, approved January 15, 1869 (Laws of 1869, page 64), and the word "direct" omitted, and it does not reappear until 1895, when its re-enactment into our laws must be presumed to have been done for a purpose, viz., to limit the operation of the writ of attachment. Before 1895 an attachment could be had in every action upon a contract, express or implied, for the payment of money, where the debt was not secured. Since then the writ can only issue in those cases arising on contracts, express or implied, for the direct payment of money, and, applying the definitions of the term "direct" as given above, the obvious intention of the legislature can be made plain. The contracts now contemplated by Section 890, above, are such only as require the payment unconditionally and absolutely of a definite sum.

As the sureties to the undertaking under consideration became liable only on condition that their principal, White, defaulted in the performance of his contract, and then only for such sum as the indemnified party might recover as damages for the breach (not exceeding the sum mentioned in the bond), we are of the opinion that the bond sued upon is not such a contract as is contemplated in Section 890, above, and that the attachment was properly discharged.

The order discharging the attachment is affirmed.

*Affirmed.*