WALL, RESPONDENT, *v.* BROOKMAN, APPELLANT.

(No. 5,527.)

(Submitted October 25, 1924.  Decided January 20, 1925.)

[232 Pac. 774.]

*Attachment—Suretyship—Contribution—Implied Contract for Direct Payment of Money.*

Attachment—Defective Complaint not Sufficient to Discharge Writ.
   1.   A mere defective statement of a cause of action readily suscep-
   tible of amendment is not a sufficient ground for the discharge of
   an attachment.

Suretyship—"Contribution"—Nature of Remedy.
   2.   The doctrine of contribution comes from the application of prin-
   ciples of equity to the condition in which the parties are found in
   consequence of some of them, as between themselves, having done
   more than their share in performing a common obligation, and the
   right may be enforced upon the theory of implied contract.

---

   1.   Right of defendant to move to dissolve attachment, see note in
Ann. Cas. 1916D, 476.

Same—Contribution—Implied Contract for Direct Payment of Money—Attachment Lies.

3. An action by a surety for contribution from his cosurety is one on an implied contract for money paid by the former for the use and benefit of the latter, which the latter unconditionally and absolutely is required to pay, under section 8206, Revised Codes of 1921, in a definite sum, to-wit, his proportion of the amount which plaintiff was required to pay on the undertaking; hence the action is one for the direct payment of money in which attachment may issue.

*Appeal from District Court, Musselshell County; George A. Horkan, Judge.*

ACTION by F. M. Wall against Charles Brookman. From an order denying a motion to discharge a writ of attachment and quash the service of summons defendant appeals. Affirmed.

*Mr. A. D. Baker,* for Appellant, submitted a brief; *Mr. U. A. Gribble,* of Counsel, argued the cause orally.

*Mr. W. W. Barton* and *Messrs. Shea & Wiggenhorn,* for Respondent, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff and defendant in this action, with another, became cosureties upon an indemnity bond given by one Robinson to the Montana Oil Company. Robinson defaulted in the fulfillment of the obligation for the faithful performance of which the bond was given, whereupon the company commenced an action upon the bond, making Robinson and his sureties parties defendant, and in the action eventually judgment was rendered in favor of the company and against the plaintiff in this action. Why judgment did not go against any of the others the record does not disclose. Anyhow, on demand of the company, and to avoid the levy of execution against his property, this plaintiff paid the amount of the judgment and costs, with interest, amounting to $2,067.10. Neither Robinson,

the principal on the bond, nor plaintiff's cosureties, have ever reimbursed him for the moneys he paid out, or any part thereof. Finding that the defendant was the owner of real estate in Musselshell county, plaintiff brought action against him for the sum of $689.03, being the defendant's aliquot share of the amount of the judgment, costs and interest paid by the plaintiff to the company. In aid of the action the plaintiff sued out a writ of attachment and levy was made upon the defendant's property. The defendant being in California, service of summons was made by publication. In due time defendant appeared specially by motion, by which he sought to discharge the writ of attachment and to quash the service of summons upon the following grounds: "(1) That the said writ of attachment was improperly issued, because it affirmatively appears from the complaint on file in said action that the alleged cause of action is not an action upon a contract, express or implied, for the direct payment of money; (2) that the court is without jurisdiction of the person of the defendant for the reason that the service of summons appears upon the face thereof to have been made without the state of Montana, to wit, the state of California." After hearing, the court denied the motion and from that order the defendant has appealed.

We agree with defendant in his assertion that the complaint [1] is faulty in some respects, but, as this court observed in *Union Bank Trust Co.* v. *Himmelbauer*, 56 Mont. 82, 181 Pac. 332, the inquiry as to the sufficiency of a complaint in a proceeding of this nature "may not go further than to ascertain whether the action is upon a contract, express or implied, for the direct payment of money; whether it states facts sufficient to constitute a cause of action against the defendant; and, if it does not, whether it can be amended so as to state a cause of action (*Kohler* v. *Agassiz*, 99 Cal. 9, 33 Pac. 741; *Hale Bros.* v. *Milliken*, 142 Cal. 134, 75 Pac. 653). A mere defective statement of a cause of action is not a sufficient ground for the discharge of an attachment."

There is nothing in the record to indicate that the defects in the complaint may not be corrected by amendment so that the complaint unquestionably will state a cause of action; rather, the contrary is indicated.

The main question is whether the action is based "upon a contract, express or implied, for the direct payment of money." (Sec. 9256, Rev. Codes 1921.)

The original contract—the bond executed by plaintiff and his co-sureties to the Montana Oil Company—was not one for "the direct payment of money." In the suit brought by the company upon the bond, attachment was not authorized by law; the obligation was conditional and bound the principal and sureties to pay, not an ascertained, liquidated amount, but upon condition broken an amount determinable by the loss sustained by the payee. (*Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197; *Carter* v. *Bankers' Ins. Co.,* 58 Mont. 319, 192 Pac. 827; *Square Butte State Bank* v. *Ballard,* 64 Mont. 554, 210 Pac. 889.) But the plaintiff grounds his action, not upon the original contract but upon the right of contribution.

The doctrine of contribution is a concept of equity. It is [2] based on the maxim "equality is equity," and originally "the right was enforced only in equity, and upon principles of natural justice. The right to it did not depend upon contract, but sprung from equitable considerations arising out of the relations of the parties to each other, and the fact of a common interest and a common burden to bear." (Note to *Gross* v. *Davis,* 10 Am. St. Rep. 639.) The doctrine of contribution "comes from the application of principles of equity to the condition in which the parties are found in consequence of some of them, as between themselves, having done more than their share in performing a common obligation." (13 C. J. 821; 6 R. C. L. 1059.) "The declaration, often made, that contribution does not spring from contract is sometimes misap-

prehended; it only means that there need not be an express contract for it." (13 C.·J. 822.)

The right became so well established that courts of common law assumed jurisdiction to enforce contribution between the sureties upon the theory of implied contract. (*Chipman* v. *Morrill*, 20 Cal. 131; 13 C. J. 822; 6 R. C. L. 1059.)

The foregoing principles have been crystallized into statutes [3] in the different states, and our Montana statute reads as follows: "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his cosureties to contribute thereto, without regard to the order of time in which they became such." (Sec. 8206, Rev. Codes 1921.) In other words, this section gives to the surety who satisfies the obligation of his principal two rights: He is subrogated to the rights which the creditor has against his principal, and he may compel contribution from his cosureties.

The statute commands defendant to pay; it recognizes the equity rule of old time to which the common-law courts applied the legal remedy of *assumpsit* as if the action rested upon an implied contract. The right of action is not based upon the written instrument upon which the surety was liable to the payee but upon an implied *assumpsit* for money paid by the surety for the use and benefit of the cosurety. (*Northwestern Nat. Bank* v. *Opera House Co.*, 23 Mont. 1, 57 Pac. 440.)

It may be admitted, then, that the action may be said to be based upon an implied contract; but is the contract one for the direct payment of money within the meaning of our attachment statute? In an opinion handed down November 8, 1924, we felt constrained to answer the question in the negative. However, being in doubt as to the correctness of our conclusion, we granted a rehearing. The cause has been reargued, additional authorities have been called to our attention, and we have given the subject renewed consideration, as a result of

which we think our former holding erroneous; that holding, we think, would narrow the operation of the statute; it would give the statute a technical rather than a liberal meaning. Probably from a purely scientific standpoint (*Nevada Co.* v. *Farnsworth* (C. C.), 89 Fed. 164), our first conclusion may be justified, but we call to mind section 4, Revised Codes of 1921, which says the rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of Montana; the provisions of the Codes and statutes and "all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice." Our present holding seems consistent with the legislative intent. The subject, however, is not without difficulty.

It is probable that originally we borrowed the phrase "for the direct payment of money" from California. The supreme court of California first had trouble with it in 1867 (*Hathaway* v. *Davis,* 33 Cal. 161), and it appears to have been bothersome ever since (3 Cal. Jur. 415).

The history of the phrase as it appears in our statute, with particular reference to the mischievous word "direct" (the elimination of which from the statute would be beneficial, as it seems to function chiefly as a trouble maker) is covered fully in the *Sparrow Case, supra.* In that case, after an exhaustive analysis of the authorities then available (and upon this point no new light appears), this court concluded that contracts contemplated by our statute as it then existed—and it is the same now—"are such only as require the payment unconditionally and absolutely of a definite sum."

Now the implied contract in the instant case, based as it is upon the statute, requires the defendant as a cosurety of the plaintiff to make contribution to the plaintiff unconditionally and absolutely in a definite sum of money, to-wit, one-third of the amount of the judgment which the plaintiff was required to pay. Therefore, attachment for the amount due the

plaintiff is warranted as upon an implied contract for the direct payment of money.

The opinion heretofore promulgated is withdrawn. The order is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.

MR. JUSTICE GALEN, being absent on account of illness, takes no part in the foregoing decision.