GILNA, APPELLANT, v. BARKER ET AL., RESPONDENTS.

(No. 6,029.)

(Submitted January 10, 1927. Decided February 24, 1927.)

[254 Pac. 169.]

*Attachment—Discharge—Appeal—Review of Order—Contract for Direct Payment of Money—Definition—Statute—Liberal Construction—Substantial Compliance Sufficient.*

Attachment—Motion to Discharge—Extent of Review on Appeal.
　1. In its review of the correctness of an order discharging an attachment, the supreme court is confined to the ground or grounds specified in the motion to discharge and may not consider any other.

Same—Insufficient Complaint—Motion to Discharge—Questions Determinable by District Court.
　2. Where a motion to discharge an attachment is directed to the complaint, the matters to be inquired into by the court are whether the action in which the writ was issued is upon a contract, express or implied, for the direct payment of money; whether it states facts sufficient to constitute a cause of action against defendant, and, if not, whether it can be amended so as to state one.

Same—Complaint—Amendment after Discharge of Attachment—Review Limited to Sufficiency of Original Pleading.
　3. Where a writ of attachment was discharged, prior to amendment of the complaint, on the ground that the contract pleaded was not one for the direct payment of money, the propriety of the court's action must be determined by what the court then had before it, to-wit, the original complaint, and not by the complaint after amendment.

[78 Mont. 343.]

Appeal—*Prima Facie* Order or Judgment Presumed Correct.

4. On appeal the presumption obtains that the order or judgment of the trial court was correct, and unless that presumption is overcome by appellant, its action will be affirmed.

Attachment—Liberal Construction of Statute.

5. Although the attachment statute, being remedial in character, must be liberally construed, substantial compliance with its requirements is necessary.

Same—Contract for Direct Payment of Money—Meaning of Term.

6. In order to constitute a contract, express or implied, one for the direct payment of money, within the meaning of the attachment statute, the obligation sued upon must be for a definite sum, unconditional, absolute, payable at a specific time and free from intervening agencies or conditions; it must not be a collateral agreement nor dependent upon any other agreement.

Same—What Constitutes Contract for Direct Payment of Money.

7. *Held*, under the above rule (par. 6), that a complaint alleging that defendants leased to plaintiff certain mining property for the purpose of mining, plaintiff to receive from defendants sixty-five per cent of the net proceeds, was one for the "direct payment of money" and that the court erred in discharging it on the ground that it was not.

Same—Contract Failing to Specify Precise Amount Due but Pointing to Instrument Furnishing Means for Ascertaining Amount, Sufficient.

8. Where the contract made the basis of attachment proceedings does not specify the precise amount to be paid by defendant but points to an instrument which furnishes the measure of ascertaining defendant's liability, it is sufficient to meet the requirement of section 9256, Revised Codes of 1921, that it must be one for the "direct payment of money" to warrant the issuance of a writ of attachment.

Same—Complaint Asking for More Than Justly Due—Effect on Validity of Writ.

9. The validity of an attachment is not affected by the fact that the complaint upon which the writ was issued asked for more than was justly due, nor may the attachment be discharged on that ground.

[1] Appeal and Error, 3 **C. J.**, sec. 800, p. 892, n. 27; 4 **C. J.**, sec. 2402, p. 589, n. 11.
[2] Attachment, 6 **C. J.**, sec. 1052, p. 455, n. 63 New.
[3] Appeal and Error, 4 **C. J.**, sec. 2573, p. 675, n. 67.
[4] Appeal and Error, 4 **C. J.**, sec. 2685, p. 751, n. 26; sec. 2686, p. 753, n. 48.
[5] Attachment, 6 **C. J.**, sec. 13, p. 37, n. 53, 54; sec. 100, p. 74, n. 51. Statutes, 36 **Cyc.**, p. 1174, n. 78.
[6] Attachment, 6 **C. J.**, sec. 104, p. 76, n. 77; sec. 107, p. 77, n. 91; sec. 111, p. 82, n. 33; sec. 112, p. 83, n. 35.
[7] Appeal and Error, 4 **C. J.**, sec. 2677, p. 745, n. 74. Attachment, 6 **C. J.**, sec. 103, p. 76, n. 73; sec. 104, p. 76, n. 77.
[8] Attachment, 6 **C. J.**, sec. 111, p. 81, n. 32.
[9] Attachment, 6 **C. J.**, sec. 992, p. 429, n. 71.

4. See 2 R. C. L. 219.
5. See 2 R. C. L. 807.
6. See 2 R. C. L. 813, 826.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by Thomas Gilna against David L. S. Barker and others, statutory trustees for the Big "7" Mining Company, a defunct corporation. From an order discharging writs of attachment, plaintiff appeals. Reversed.

*Messrs. Graybill & Graybill,* for Appellant, submitted an original and a supplemental brief; *Mr. F. L. Graybill* argued the cause orally.

Citing: *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 101 Am. St. Rep. 563, 1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197; *Wall* v. *Brookman,* 72 Mont. 228, 232 Pac. 774; *DeLeonis* v. *Etchepare,* 120 Cal. 407, 52 Pac. 718; *Home State Bank* v. *Swartz,* 72 Mont. 425, 234 Pac. 281; *Greenebaum* v. *Smith,* 51 Cal. App. 692, 197 Pac. 675; *American Surety Co.* v. *Kartowitz,* 54 Mont. 92, 166 Pac. 685; *State ex rel. Barnett* v. *Reynolds,* 68 Mont. 572, 220 Pac. 525; *Dunn* v. *Mackey,* 80 Cal. 104, 22 Pac. 64; *Hamburger* v. *Halperm,* 28 Cal. App. 317, 152 Pac. 61; *State* v. *Superior Court,* 105 Wash. 676, 178 Pac. 827; *California Packing Corp.* v. *Kato,* 45 Cal. App. 491, 188 Pac. 57.

*Messrs. Maddox & Church,* for Respondents, submitted a brief; *Mr. Fletcher Maddox* argued the cause orally.

The contract set out in the complaint is not an express contract for the direct payment of money. If the phrase "direct payment of money" means anything at all, it means something different from an oral mining lease which provides that the plaintiff shall receive a certain percentage of the net proceeds of ore which he mines, and which, at the time of the contract is a sum wholly uncertain and indeterminate, and which the complaint states only on information and belief to be a certain

sum in the hands of the defendants. It would be impossible in such case to declare upon a definite sum payable unconditionally, or, in other words, upon an express contract for the direct payment of a definite sum of money. The distinction is clearly pointed out by Mr. Justice Holloway in the *Sparrow Case,* 29 Mont. 137, and which is also cited in *Beartooth Stock Co.* v. *Grosscup,* 57 Mont. 595, 189 Pac. 773; *Wall* v. *Brookman,* 72 Mont. 228, 232 Pac. 774; *Carter* v. *Bankers Ins. Co.,* 58 Mont. 319, 192 Pac. 827. The plaintiff does not declare upon a definite sum payable unconditionally and absolutely. The best it does is to supply a yardstick by which whatever sum may be found due the plaintiff upon a trial may be ascertained. In this connection the appellant seeks to apply a maxim, "That is certain which can be rendered certain"—a maxim which was invoked in the *Carter Case, supra,* but without success.

In *Square Butte State Bank* v. *Ballard,* 64 Mont. 554, 564, 210 Pac. 889, the court said: "If any proposition of law can be deemed settled in this state, this one ought to be beyond further controversy, *viz.:* that the contracts contemplated by the attachment statute are such only as require payment of a definite sum unconditionally and absolutely."

MR. JUSTICE MYERS delivered the opinion of the court.

In this case the appeal before us is from an order discharging uniform writs of attachment, directed to sheriffs of different counties. The order of discharge was made upon motion of defendants. Plaintiff appealed. The only specification of error assigned is the action of the trial court in making the order of discharge.

At the outset, counsel for defendants, in their brief, supplemented by oral reference in the argument to the court, suggest that, on account of delay of plaintiff in taking the appeal, the appeal should not be considered but should be dismissed.

Counsel for defendants did not move to dismiss the appeal; they only call attention to the delay and suggest the court, of its own motion, might well order the appeal dismissed.

There are various features to that phase of the case. The case was brought and it was originally defended by wholly different counsel from the counsel now representing the plaintiff and the defendants, respectively. It appears from statements of counsel now in the case, made on one hand and admitted on the other, that, on its merits, the case was tried twice in the court below. It likewise appears there were, between former respective counsel, various stipulations, not set forth in the record, for time. Just what they were we do not know. However, as counsel now representing defendants have not seen fit to move the dismissal of the appeal, we shall not, of our own motion, dismiss it. It does not present conditions which move us so to act.

The motion for discharge of the writs of attachment was made upon the ground that the writs were improperly and irregularly issued, in that the cause of action set forth in plaintiff's complaint and upon which attachment issued does not state an action upon contract, express or implied, for the direct payment of money, as required by section 9256, Revised Codes, 1921. Substantially, the language of the motion is adopted here.

Thus, it is seen, the motion was made upon one specific ground and one only, i. e., that plaintiff's cause of action is not based upon a contract, express or implied, for the direct payment of money. There is stated, in plaintiff's complaint, but one cause of action. Our task is restricted, therefore, to the inquiry if plaintiff pleads a contract, express or implied, for the direct payment of money by defendants to plaintiff.

The brief of defendants urges various objections to plaintiff's [1] complaint and to the affidavit for the writs. It contends there are various defects in each. However, we are confined to

the one ground specified in the motion to discharge the writs. We may not consider any other. (*Newell* v. *Whitwell,* 16 Mont. 243, 40 Pac. 866; *Omaha Upholstering Co.* v. *Chauvin-Fant Furniture Co.,* 18 Mont. 468, 45 Pac. 1087; *American Surety Co.* v. *Kartowitz,* 59 Mont. 1, 195 Pac. 99; *Davis* v. *Bryant,* 62 Mont. 352, 205 Pac. 209.)

The objection urged in the court below was confined solely [2] to the complaint and to one phase of the complaint, *viz.,* whether or not it pleaded a contract, express or implied, for the direct payment of money. Counsel for defendants make much of the fact that plaintiff, in his complaint, alleges on information and belief that, arising out of the contract pleaded, a certain sum of money is due plaintiff from defendants. That is beside the question before us. In the court below, defendants did not make that objection; they did not assign, as a ground of their motion, that plaintiff pleaded, on information and belief, the amount due on the contract. They ignored that and went deeper. They went right down to the very rock bottom basis of the action, the contract, itself, and attacked it,—the contract out of which arose the amount due (if any), be it much or little. Their objection was not to how plaintiff knew or alleged or computed what was due but it went deeper; it was that the contract on which anything at all might be due was not such a contract as justified an attachment. We are not to look to how plaintiff knew or alleged what was due on the contract but to the contract, itself, and decide if it was such a contract as justifies attachment.

Be that as it may, when the motion to discharge is directed to the complaint, as in the instant case, there are only three things to be inquired into: (1) whether the action is upon a contract, express or implied, for the direct payment of money; (2) whether it states facts sufficient to constitute a cause of action against the defendant; (3) if not, whether it can be

amended so as to state one. (*Union Bank & Trust Co.* v. *Himmelbauer*, 56 Mont. 82, 181 Pac. 332.)

For the moment, taking up clause 2, above specified, it is plain the complaint in the instant case states a cause of action, of some kind, against the defendants. It is not contended it does not. It is contended only that it is not the kind that justifies attachment. That conclusion eliminates clause 3, above. That leaves for us the sole inquiry, whether the action is based upon a contract, express or implied, for the direct payment of money.

Both counsel for plaintiff and counsel for defendants, in their respective briefs, refer to two trials below and to the fact [3] that, after the first trial, an amended complaint was filed. Counsel for defendants contend that the filing of an amended complaint rendered *functus officio* the original complaint, on which the writs of attachment were based, and that the amended complaint related back to the time of the institution of the action and that now the amended complaint is the pleading by which the writs of attachment must be tested; further, that, as the amended complaint does not appear in the record, the order discharging the writs now rests on a pleading not before us and we must assume the trial court was right in making the order.

Certainly the amended complaint rendered *functus officio* the original complaint and related back to the institution of the action, for the purposes of the second trial of the action; but we cannot concede that it must now, on this appeal, be considered the complaint which was in existence when the writs of attachment issued or when they were discharged or as the pleading on which rested the writs at the time of discharge, and upon which the trial court acted in ordering the discharge.

The writs were discharged, apparently, long before the second trial. The first trial intervened between the two events.

The attached property was released, apparently, long before the filing of the amended complaint.

Had plaintiff, when the writs were ordered discharged, instead of standing on his complaint, obtained leave to file, within a reasonable time, an amended complaint, and had he done so, he might then have had the attachment reinstated or it might have been ordered kept in force, pending such filing. Then the attachment would have rested on the amended complaint. However, plaintiff did not do that. He elected to stand on his complaint and he appealed. It was on the original complaint that the trial court ordered the writs discharged. Evidently, the trial court ordered the writs discharged because, in the opinion of the court, the contract pleaded in the original complaint was not a contract, express or implied, for the direct payment of money; the only ground assigned in the motion.

Now the question is, was the trial court correct in discharging the writs, at the time, on what it then had before it? We are to decide what the trial court should have done, at the time, on what then was before it. In so doing, "the case must be decided by this court precisely upon what was before the district court." (*Newell* v. *Whitwell, supra; Davis* v. *Bryant, supra.*) What was precisely before the district court? The original complaint and the rest of the record (save the order of discharge and the notice of appeal) now before us.

Now, coming to the only question involved in this appeal, is the contract pleaded in the complaint a contract, express or implied, for the direct payment of money?

The presumption is that the order of the trial court was correct. Unless that presumption may be overcome by adequate authority to the contrary, it must be affirmed: (*Ringling* v. *Smith River Dev. Co.,* 48 Mont. 467, 138 Pac. 1098; *Dover Lumber Co.* v. *Whitcomb,* 54 Mont. 141, 168 Pac. 947; *State* v. *Schoenborn,* 55 Mont. 517, 179 Pac. 294.)

In the early case of *Cope* v. *Upper Missouri M. & P. Co.*,
[5] 1 Mont. 53, this court, speaking of statutory attachment,
said: "Being a remedial statute, it should be liberally and
beneficially expounded." That pronouncement has not been
rescinded, modified or qualified by this court. It is reiterated
in *Wall* v. *Brookman*, 72 Mont. 228, 232 Pac. 774. That is
not saying, however, the requirements of the law must not be
met. Substantial compliance with the requirements of the stat-
ute is necessary. (*Continental Oil Co.* v. *Jameson*, 53 Mont.
466, 164 Pac. 727.)

The question of what is a contract, express or implied, for
[6, 7] the direct payment of money, has been given by this
court a fairly broad construction. In *Ancient Order of Hi-
bernians* v. *Sparrow*, 29 Mont. 132, 101 Am. St. Rep. 563,
1 Ann. Cas. 144, 64 L. R. A. 128, 74 Pac. 197, speaking of such
contracts, the opinion says: "The contracts now contemplated
are such only as require the payment, unconditionally and
absolutely, of a definite sum." In *Square Butte State Bank*
v. *Ballard*, 64 Mont. 554, 210 Pac. 889, the opinion defines a
debt arising from such a contract as one which the debtor is to
pay "absolutely and unconditionally, at a specified time." In
that case, three of the justices of this court, in a concurring
opinion, said: "The contracts contemplated by the attachment
statute are such only as require the payment of a definite sum,
unconditionally and absolutely." In *Wall* v. *Brookman, supra,*
it is held that an action, by a surety, for contribution from
his co-surety, when the plaintiff had to pay the amount of a
surety bond, upon default of the principal, is an action upon
such a contract, under the definitions hereinbefore given.
*State ex rel. Barnett* v. *Reynolds*, 68 Mont. 572, 220 Pac. 525,
was an action on a bond, in which the sureties agreed to in-
demnify a county treasurer for any default of a bank to pay
over to him, on demand, any funds he might have on deposit
therein. The bank had defaulted. The action ensued. The

court held it to be an action wherein an attachment would lie. Speaking of the obligation, the opinion says: "The contract was not one collateral to the performance of another agreement. * * * It is not made dependent on any other agreement." The same doctrine is declared in *Jenkins* v. *First National Bank,* 73 Mont. 110, 236 Pac. 1085.

In some of the cases on this subject, the question is raised as to what is meant by "direct" payment of money, and counsel for defendants in the instant case raise it. In *Ancient Order of Hibernians* v. *Sparrow, supra,* this court approvingly quoted from Webster's Dictionary these definitions of the word "direct": "Immediate, express, unambiguous, confessed, absolute." In that case the court held the obligation involved was not a contract for the direct payment of money, because it was an agreement of guaranty, dependent upon another agreement, and the sum to be paid was uncertain. In *Ross* v. *Gold Ridge Mining Co.,* 14 Idaho, 687, 95 Pac. 821, the opinion says: "The words 'direct payment,' as applied to payments and as used in the statute, clearly mean absolute, unconditional, free from intervening agencies or conditions."

From the foregoing cited decisions, we deduce that, in order to constitute a contract, express or implied, for the direct payment of money, the obligation must be (1) for a definite sum; (2) unconditional; (3) absolute; (4) payable at a specific time; (5) free from intervening agencies or conditions. Those things are what it must be. There are some things it must not be. It must not be (1) a collateral agreement, nor (2) dependent on any other agreement. Furthermore, when put in the form of an action, the obligation, of course, must be one due from the defendant to the plaintiff.

Applying those tests to the obligation pleaded in plaintiff's complaint, how do they fit?

We must, of course, for the purposes of this appeal, assume that all of the allegations of the complaint are true. Whether

true or not was a question solely for the trial of the action. The complaint alleges that defendants leased plaintiff certain mining property; plaintiff to mine the same and therefrom extract ore; the ore to be shipped, for treatment, to a smelter; plaintiff to be entitled to and to be paid sixty-five per cent. of the net proceeds, after treatment. It further alleges that a certain quantity of ore was mined and extracted by plaintiff and was so shipped and treated; that the net proceeds, in a certain sum, were paid to defendants; that sixty-five per cent. thereof, in a certain sum, was due plaintiff from defendants, demand for which had been made on defendants by plaintiff and no part thereof paid.

Looking to the allegations of the complaint, first, undoubtedly there was a contract; it was a contract between plaintiff and defendants. The consideration of the contract, flowing from defendants to plaintiff, is a "definite sum of money," *viz.*, sixty-five per cent. of the net proceeds, after treatment, of the ore extracted by plaintiff from defendants' mining property. Its payment was to be "unconditional." There was annexed no condition whatever. Likewise, "absolute." There was no qualification. It was payable at "a specific time," *i. e.,* immediately after treatment, at the smelter, of the ore. It was "free from intervening agencies and conditions." None are suggested. Nothing was to intervene. The contract was not a collateral agreement. It was not dependent on any other agreement. The money was due from defendants to plaintiff. It was to be paid by defendants to plaintiff.

Counsel for defendants say it is uncertain, from the complaint, whether payment was to be made by defendants or by the smelter company. A reasonable construction of the entire text of the complaint shows, we think, that payments were to be made directly by defendants. One sentence, taken alone, would indicate that defendants were to furnish the smelter company with the name and address of plaintiff and that the

company, upon treatment of the ore, was to remit to plaintiff his sixty-five per cent. of the net proceeds. However, it makes no difference whether payment was to be made directly by defendants or through the smelter company, at the direction of defendants. In the latter event, the company would be the agent of defendants. The contract was with defendants. They were responsible. They could pay directly or through an agent. There was no contractual relation between plaintiff and the smelter company.

Counsel for defendants contend that the consideration to be [8] paid to plaintiff was uncertain and indeterminate; not at all. It was sixty-five per cent. of the net proceeds of ore, extracted and treated. The measure of consideration is certain. The contract, itself, furnishes the measure for ascertaining the amount due. It is analogous to an agreement of a dealer with an agent who is to go out and sell goods for the dealer, on a commission of one-third of the gross sales made. If, on such a contract, an agent should sell goods to the amount of $1,000, and if the dealer, as and when agreed, should fail to pay the commission earned, is there any doubt the agent could sue for $333.33 and lawfully attach the dealer's property? There can be none. How is that different from the instant case? We cannot see.

It is sufficient if the contract furnish the measure—the means—of ascertaining defendant's liability. "As a general rule, no attachment will lie where the contract, itself, does not furnish the measure of defendant's liability and the damages claimed are speculative or so uncertain that plaintiff cannot swear with any certainty to the amount that will be found due him. However, the remedy is not confined to cases where a debt, in the technical sense, exists; it extends to every demand arising *ex contractu* where any fixed standard for determining the amount is supplied by the contract, itself, or the law acting upon it." (4 Cyc. 444, 445, and numerous cases cited.)

"True, the contract does not specify the precise amount to be paid but it points directly to the instrument or record which does, which is all that is required." (*Ross* v. *Gold Ridge Mining Co., supra.*)

Test the obligation in the instant case by the definitions of the word "direct," approved by this court in *Ancient Order of Hibernians* v. *Sparrow, supra.* It is "immediate." It was to be paid immediately upon treatment of the ore. It is "express." The amount of the consideration is clearly expressed. It is "unambiguous." There is nothing ambiguous about sixty-five per cent. It is "confessed," because not denied for the purposes of this appeal. It is "absolute." It is not qualified. It is not collateral. It is not dependent on any other agreement. It is free from intervening agencies and conditions.

It may be said the obligation was dependent upon the extraction, by plaintiff, of some ore. That was plaintiff's obligation. In the case of a bilateral contract, as the one in question, each party to it must do something. Some duty must rest on each party. Of course, if plaintiff had failed to perform, he could not have called on defendants to perform. Plaintiff having performed, the obligation of defendants was certain, unconditional. If A agrees to work for B at $100 per month, one might say the obligation of B is conditional, dependent on A doing the work. Yet, if A does the work and be not paid, no one will say there is not owing by B to A a debt which would support an attachment. There is no distinction between that illustration and the instant case.

There is no more of a condition in the contract in the instant case than there was in the contract set forth in the case of *State ex rel. Barnett* v. *Reynolds, supra,* in which there could be no obligation on the part of the sureties until default by the bank. It was certain there was an obligation in the event of a default. In the contract in the instant case, it is certain

there was an obligation upon defendants to pay whenever ore should be extracted and treated.

Counsel for defendants cite *Porter* v. *Plymouth Gold Mining Co.,* 29 Mont. 347, 101 Am. St. Rep. 569, 74 Pac. 938. The contract therein was conditional. A corporation sold stock of the corporation and agreed to take it back and refund the purchasé price, if the purchaser should become dissatisfied. That was a very pronounced condition, a very great contingency.

Counsel cite *Carter* v. *Bankers Ins. Co.,* 58 Mont. 319, 192 Pac. 827. In that case the opinion says: "The action was, therefore, not for a sum fixed or ascertainable from the terms of the contract." In the instant case, the sum payable is ascertainable from the terms of the contract.

Counsel cite *Butler* v. *Peters,* 62 Mont. 381, 26 A. L. R. 560, 205 Pac. 247. In that case, the court held the recovery sought was upon a penalty and not a contract; that the alleged indebtedness was not contractual.

Counsel cite some other cases but they are cited mostly in support of attacks upon the affidavit for attachment or other grounds not mentioned in the motion to discharge the writs, and we are restricted to the one ground mentioned in the motion.

Counsel for defendants take exception to the ten-per-cent. [9] penalty of $77.50 alleged in plaintiff's complaint and included in his prayer for judgment. We are not prepared to say if that was proper; it is not necessary for us to say. If the action be one to support an attachment and something be due plaintiff, if more be claimed than should be awarded, the validity of the attachment is not thereby affected; nor is it ground for discharging the attachment.

We have earnestly endeavored to see if authority might be discovered to uphold the order of the district court, as well as to learn if the weight of authority is opposed to it. After a careful review of all authorities cited in either brief before us

and many more, we conclude and hold that the cause of action set forth in plaintiff's complaint constitutes an action upon an express contract for the direct payment of money and that the district court erred in discharging, by order, the writs of attachment.

The order of the district court is reversed.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.