KIPP, Appellant, *v.* PAUL, Respondent.

(No. 8,078.)

(Submitted May 27, 1940. Decided June 25, 1940.)

[103 Pac. (2d) 675.]

*Mr. Selden S. Frisbee,* for Appellant.

*Mr. D. W. Doyle,* for Respondent.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from an order of the district court of Glacier county, discharging a writ of attachment and quashing the levy thereof. The attachment proceedings were based upon a cause of action alleging a principal-surety relationship between plaintiff and defendant, the plaintiff being the alleged surety and the defendant the alleged principal. Briefly, plaintiff's complaint contained the following allegations: That on December 16, 1927, defendant entered into a contract to purchase goods from the W. T. Raleigh Company; that defendant induced plaintiff to subscribe such contract as a surety, by virtue of which plaintiff guaranteed and agreed to pay defendant's obligation under the contract with the Raleigh Company; that said surety agreement was jointly entered into by plaintiff and two others, all to be joint sureties for defendant; that defendant made purchases from the Raleigh Company under his contract with them, and on the 27th day of June, 1928, he owed the company $556.08; that on October 3, 1935, the Raleigh Company commenced suit against defendant and plaintiff and the other two sureties to recover the said amount of $556.08, plus interest at eight per cent from June 27, 1928; that on December 7, 1937, the date on which plaintiff satisfied the pending Raleigh Company suit, the total amount owed by defendant to the Raleigh Company, including accumulated interest, was $1,025; that on said 7th day of December, 1937, plaintiff was compelled to, and did settle such sum due by paying to the Raleigh Company $615, and that he paid such sum as a surety upon defendant's contract with

the Raleigh Company; that plaintiff has demanded reimbursement from defendant of the said sum of $615, but defendant has refused to pay same. He thereupon prayed judgment against defendant for $615, plus interest at six per cent from December 7, 1937. From the last two allegations, it appears that plaintiff alleges that he compromised the Raleigh suit for $1,025 before it was taken to final judgment, by a payment of $615.

Upon the filing of the complaint, plaintiff filed appropriate ▇▇▇ attachment papers, and had property of defendant levied upon. Defendant, thereafter, filed his motion to have the attachment discharged, and the levy of the writ quashed upon the grounds that: (1) The allegations of plaintiff's complaint do not show the existence of any contract between plaintiff and defendant for the "direct payment of money," which is necessary for the proper issuance of a writ of attachment; (2) that the complaint discloses upon its face that plaintiff does not and cannot state a cause of action, which will sustain a writ of attachment. The court granted defendant's motion to discharge, and thus we have this appeal.

Defendant, in his brief, argues that the order discharging the writ is sustainable on either and both of the above-mentioned grounds. We shall have to discuss both grounds for the motion in order to reach a proper decision of this case, which grounds present two brief questions: (1) Is an action by a surety (plaintiff) against his principal (defendant) for reimbursement to the surety of an obligation which was paid by the surety on behalf of the principal, an action based upon a "contract for the direct payment of money" as required by the attachment statute section 9256, Revised Codes? (2) Was the settlement by the plaintiff of the Raleigh Company suit prior to judgment a voluntary payment which precludes this action for reimbursement, and its ancillary attachment proceedings?

We think the first question has been answered by this court in the case of *Wall* v. *Brookman*, 72 Mont. 228, 232 Pac. 774. Although that case involved an action by one surety against his co-surety, and upheld a writ of attachment based upon such an

action, we think the reasoning and principles of law therein stated are also applicable to the present case involving an action for reimbursement by a surety against the principal debtor. We hold that where a surety is compelled to pay the principal's obligation, the law implies a contract on the part of the principal to reimburse his surety, and that such a contract is one for the direct payment of money and a proper case for attachment proceedings. Section 8206, Revised Codes, provides that a surety "upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended." If this statute is to mean anything, it should also include the right of the surety to obtain a writ of attachment—the same right and remedy that the creditor would have against the principal debtor.

On the second question, defendant argues that when plaintiff settled the Raleigh suit prior to judgment, he was a volunteer-payer, and the case of *Wall* v. *Brookman,* supra, does not apply because there Wall was compelled by *judgment* to pay the principal obligation. It is the defendant's theory that it is only under circumstances where a surety is *judicially* compelled to pay that gives rise to an implied contract, and that where a surety voluntarily makes payment—no contract of reimbursement can be implied. No doubt it is the law that unless a surety is legally bound to make payment on behalf of his principal, he is not entitled to reimbursement. But it certainly is not the law that a surety is legally bound to pay only after judicial determination. In this state the matter is settled by section 8205, Revised Codes, which provides: "If a surety satisfies the principal obligation, or any part thereof, *whether with or without legal proceedings,* the principal is bound to reimburse what he has disbursed * * * ." (Italics supplied.)

No statute could be plainer, and where words of clear, concise and ordinary meaning are used, there is no room for strained or subtle construction. (*Northern Pac. Ry. Co.* v. *Sanders County,* 66 Mont. 608, 214 Pac. 596.) It is unam-

biguous, and means exactly what it says. We will agree with defendant's counsel that most of the cases regarding reimbursement to a surety are where the liability of the principal debtor and his surety had been reduced to judgment. No doubt the reason for this situation is that a final judgment would be prima facie evidence of the principal debtor's liability to reimburse his surety who was forced to pay the original obligation. Without question the very thing contemplated by section 8205 is that a surety's liability may arise without a judicial determination thereof; and if he can *prove* that he was legally bound to pay his principal's obligation, then he can recover from his principal in an action for reimbursement. The only risk that he takes is that his proof of his principal's liability to reimburse him may be more difficult without a prior judgment establishing liability on the original obligation. But, obviously here (assuming that plaintiff can *prove* that he was legally compelled to pay), if plaintiff had waited until final judgment of the Raleigh suit, he and defendant would have had to pay $1,025. To give section 8205 the unwarranted construction advanced by defendant's counsel, would be to penalize plaintiff for acting in a business-like manner in settling the $1,025 claim for $615.

Plaintiff alleged that he was compelled to pay defendant's ▮ obligation to the Raleigh Company. In fact he alleged all the essentials to constitute a cause of action for reimbursement. (See Bancroft on Code Pleading, 4285; 50 C. J. 269, for proper allegations in such an action; also the case of *Bielenberg* v. *Higgins*, 85 Mont. 69, 277 Pac. 636, upholding a complaint for reimbursement.) See, also, the case of *Henneke* v. *Strack*, 101 S. W. (2d) 743, 748, Kansas City Court of Appeals, which holds that where the complaint discloses facts showing that the obligation was due and that defendant failed to pay it, it was sufficient as an allegation that plaintiff was compelled to pay. The court therein said: ''When the note became due plaintiff was under the obligation to pay it and the payment was not voluntary, even though the payment might have been made without demand or suit.''

518

The order of the district court discharging the writ of attach-ment, and quashing its levy, should be set aside. It is so ordered.

Mr. Chief Justice Johnson and Associate Justices Morris, Angstman and Arnold concur.