No. 14387

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

OTTO STENSVAD,

Plaintiff and Respondent,

-vs-

MINERS & MERCHANTS BANK OF
ROUNDUP, MONTANA,

Defendant and Appellant.

Appeal from: District Court of the Fourteenth Judicial District,
Honorable Robert D. McPhillips, Judge presiding.

Counsel of Record:

For Appellant:

Towe, Ball, Enright & Mackey, Billings, Montana
Gerald Neely argued, Billings, Montana

For Respondent:

Moses, Tolliver and Wright, Billings, Montana
Kenneth Tolliver argued, Billings, Montana

Submitted: June 13, 1979

Decided AUG 1 1979

Filed: AUG 1 1979

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal is by the Miners & Merchants Bank of Roundup, Montana (Bank) from an order of the District Court, 14th Judicial District, Musselshell County, dated May 11, 1978, dissolving a writ of attachment levied against property of Otto Stensvad. The order is appealable under Rule 1(b), Mont.R.App.Civ.P.

The matter comes to us on an agreed record on appeal. It appears therefrom that on two occasions Otto Stensvad executed two instruments denominated "guaranty". One instrument was dated January 2, 1970 and related to borrowings made from the Bank by Agri-Services, Inc. The second instrument dated September 16, 1971 related to borrowings made by M-V Enterprises, Inc., M & S Cattle Feeders, L. D. Stensvad Cattle Company, and L. D. Stensvad as an individual. Each instrument contains the following pertinent language:

> "GUARANTY
> "The undersigned hereby requests the Miners & Merchants Bank, Roundup, Montana (herein called the "Bank") to give and continue to give (herein called the Borrower) credit, as the Borrower may desire and the Bank may grant, from time to time, . . . and in consideration of any credit given, the undersigned [Otto Stensvad] hereby absolutely and unconditionally guaranties prompt payment when due and at all times thereafter of any and all existing and future indebtedness. . . from the Borrower to the Bank. . . The undersigned [Otto Stensvad] hereby waives presentment, protest, notice, demand or action on delinquency in respect of any such indebtedness or liability, including any right to require the Bank to sue or otherwise enforce payment thereof.
>
> ". . . It is agreed that the undersigned's liability hereunder is several and is independent of any other guarantees at any time in effect with respect to all or any part of the Borrower's indebtedness to the Bank, and that the undersigned's liability hereunder may be enforced regardless of the existence of any such other guaranties."

-2-

Each guaranty is limited to $200,000 although the aggregate amount of guaranty is disputed by Stensvad.

Stensvad commenced the action in the District Court on November 16, 1971, by his complaint seeking exoneration from the said written guaranties. By answer and amended counterclaim, the Bank seeks judgment against Stensvad in the total sum of $400,000 plus attorney fees on the ground that the notes and loans of the Bank to the borrowers have all become due and delinquent or have become accelerated, due, and delinquent. On January 31, 1972, a writ of attachment was issued by the District Court in the action and levied upon properties of Otto Stensvad. On March 3, 1978, Otto Stensvad moved to vacate the writ of attachment on the ground, among others, that the attachment was not based upon a contract for the direct payment of a sum certain of money. On May 11, 1978, the District Court issued its order dissolving, releasing and discharging the attachment as to all properties upon which the levy had been made. Appeal was taken by the Bank and the matter comes to us in the usual course. We ordered the appeal to be submitted to us on briefs without oral argument, and the cause is now ready for decision.

We affirm the order of the District Court dissolving the writ of attachment. The sole issue presented to us is whether the guaranties involved here are contracts for the direct payment of money so as to entitle the Bank to a writ of attachment under the Montana statutes. A guaranty, under Montana law, is clearly not a contract for the direct payment of money.

Section 27-18-101 MCA, says that:

"(1) Property may be attached in:
(a) an action upon a contract, express or implied, for the direct payment of money. . ."

-3-

Section 28-11-101 MCA, defines a guaranty:

> "A guaranty is a promise to answer for the debt, default, or miscarriage of another person."

It is firmly established in Montana law that an instrument of guaranty will not support the issuance of a writ of attachment. In General Finance Co. v. Powell (1941), 112 Mont. 535, 540, 118 P.2d 751, 753-754, this Court said:

> "The attachment law is purely of statutory origin and while, like other statutes, it must be liberally construed to effect its objects (sec. 4, Rev. Codes), the courts have not the right under the guise of liberal construction to read into the statute any meaning which its words, construed according to the statutory rules, do not convey. To construe a statute is to ascertain the intent of the legislature (sec. 10520, Rev. Codes), and not to substitute the court's discretion for that of the legislature (sec. 10519, Rev. Codes). Consequently our duty is to decide the meaning of the legislature's words, construed ordinarily according to the context and the approved usage of the language (sec. 15, Rev. Codes). The question is simply this: Is a guaranty of 'the full payment of said contract and prompt payment of all sums due thereunder' a contract for the direct payment of money?
>
> "As pointed out by this Court in Ancient Order of Hibernians v. Sparrow, 29 Mont. 132, 74 P. 197, 64 L.R.A. 128, 101 Am.St.Rep. 563, 1 Ann.Cas. 144, the word 'direct' first appeared in our attachment statute in 1866 and again as the statute was re-enacted in 1867 after the congressional invalidation of the 1866 legislation (14 Stat. 427) was omitted in 1869, and reinserted in 1895. Therefore there can be no doubt that the legislature attached some substantial meaning to the word. 'Direct' is defined by Webster's New International Dictionary (Webster-Merriam 2d Ed.) as denoting 'the absence of any intervening medium or influence'; as meaning 'marked by the absence of an intervening agency or influence.' Obviously defendant's guaranty of the purchaser's performance of the conditional sales contract is not a contract for the direct payment of money, since defendant's liability is conditioned entirely upon an intervening medium, agency or influence--namely, upon the purchaser's default, which as to eventuality, time and amount was

-4-

entirely problematical. If it is to be
construed as a contract for the direct
payment of money, it is hard to imagine
any contract for the payment of money
which is not for its direct payment.

"This court has long held that the term
meant an unconditional and absolute
obligation to pay money (Ancient Order
of Hibernians v. Sparrow, supra; Heffron
v. Thomas, supra; Wall v. Brookman, 72
Mont. 228, 232 P. 774), and not a
collateral agreement dependent or
contingent upon some other agreement.
Square Butte State Bank v. Ballard,
64 Mont. 554, 210 P. 889; Gilna v.
Barker, 78 Mont. 343, 254 P. 169.
In the Square Butte Bank Case [64
Mont. 554, 210 P. 890] suit was brought
upon defendant's contract of guaranty
that 'for value received, I hereby
guarantee the collection and payment
of the within note,' and it was held
that the guaranty, being dependent upon
the contingency of the debtor's breach
of another contract, was not a contract
for the direct payment of money. In
Wall v. Brookman, supra, this court
went so far as to suggest that the
elimination of the word 'direct' from
the statute would be beneficial, but
as the legislature has not seen fit
to eliminate it, the courts may not
overrule the legislature in order to
do so."

See also Wall v. Brookman (1925), 72 Mont. 228, 232

P. 774; Square Butte State Bank v. Ballard (1922), 64 Mont.

555, 210 P. 889; Butte Machinery Co. v. Carbonate Hill Mining

Co. (1926), 75 Mont. 167, 242 P. 956; Muri v. Young (1926),

75 Mont. 213, 245 P. 956.

The Bank however contends that the instruments

involved here are not instruments of guaranty, but rather of

surety, and as such Otto Stensvad is bound with the principals

as an original promissor on the borrowings. We cannot

interpret the instruments before us as contracts of surety.

Each is denominated by the Bank as a "guaranty"; each is a

promise by Otto Stensvad to answer for the debt, default, or

miscarriage of another person or entity. As such, each in-

strument is a guaranty instrument, and not a surety instrument,

even though each provides that Stensvad's liability is "several" and that Stensvad waived all right to require enforcement of payment from the borrower. The Bank cannot escape the effect of the instrument with respect to Stensvad, that his liability is conditioned entirely upon an intervening event, that is the borrower's default. General Finance Co. v. Powell, supra.

As early as 1900, in Cole Mfg. Co. v. Morton (1900), 24 Mont. 58, 60 P. 587, this Court distinguished between a surety and a guaranty, pointing out that a surety is bound as an original obligor, while a guarantor is bound on a collateral promise. A surety makes himself responsible for the perfor- mance of his principal, a guarantor only agrees to answer for the debt, default or miscarriage of another. These distinctions are preserved in our statutes. Compare section 28-11-401 MCA defining surety, with section 28-11-101 MCA defining guarantor.

When all the smoke clears in this appeal, a single fact stands out: Otto Stensvad is not liable under the instruments he executed for the Bank unless the borrowers defaulted to the Bank. Therefore the District Court was correct in ordering the writ of attachment dissolved.

Affirmed.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices